Argued November 27, 1973, affirmed January 21; reconsideration denied February 27, petition for review denied March 26, 1974

STATE OF OREGON, *Respondent, v.* ERIC
ANTHONY WOOLERY (No. 72-4180),
*Appellant.*

517 P2d 1212

*Terence J. Hammons,* Eugene, argued the cause for appellant. With him on the brief were Hammons, Phillips & Jensen, Eugene.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and THORNTON and TANZER, Judges.

## THORNTON, J.

Defendant was convicted after a bench trial of criminally negligent homicide. ORS 163.145. He appeals, contending that the trial court erred:

(1) In overruling defense counsel's objection to cross-examination of defendant concerning his general drinking habits;

(2) In overruling defendant's objection to testimony of a pathologist which was based in part upon the contents of charts and tables purporting to show the amount of alcoholic liquor required to be consumed in order to raise the blood alcohol level of a given individual to a given level, and in denying defendant's motion to strike such testimony;

(3) In denying defendant's motion for judgment of acquittal and in returning a finding of guilty; and

(4) In denying defendant's motion to strike certain items from the presentence report.

In support of his first assignment defendant cites the general rule that the state cannot prove that a defendant committed the act with which he is charged by offering evidence that he committed a similar act at some other time or that he habitually performs similar acts.

The state argues that the questions asked and the answers elicited were for the purpose of impeaching defendant's credibility with respect to his version of how little liquor he consumed prior to the fatal accident.

■ Assuming arguendo that this was improper cross-examination, no answers were elicited that were harmful to defendant. Therefore this would not be reversible

error. *State v. Cook,* 154 Or 62, 59 P2d 249 (1936);
*State v. Tippie,* 15 Or App 660, 517 P2d 1063 (1973).

Defendant's second assignment deals with the
testimony of the state's pathologist. This witness based
his testimony in part upon the contents of charts and
tables containing averages of experimental results pur-
porting to show the amount of alcoholic liquor required
to be consumed in order to raise the blood alcohol level
of a given individual to a given level.

The charts and tables in question were not offered
in evidence. The pathologist did not identify the re-
searcher or publishing organization beyond stating
that the material was "from an international confer-
ence on alcohol held in Washington, D.C., in 1968."

The appellate courts of several states have sus-
tained trial courts in permitting experts in the field
of chemical tests to refer on the witness stand to
standards established by national organizations such
as the American Medical Association or the National
Safety Council.[1] Some courts have allowed such experts
to refer to the results of experiments on the subject.[2]

Defendant argues for a contrary rule, citing sev-
eral cases in which the Oregon Supreme Court has taken
a restrictive view of the admissibility, in jury cases, of
the contents of publications purporting to show the
results of medical and other scientific research by ex-
perts who were not personally present in court to testify
and be cross-examined. *See,* for example, *Eckleberry v.*

---

[1] Lawrence v. City of Los Angeles, 53 Cal App2d 6, 127 P2d
931 (1942); Toms v. State, 95 Okla Cr 60, 239 P2d 812 (1952);
Yarborough v. State, 160 Tex Cr 239, 268 SW2d 154 (1954).

[2] State v. Sturtevant, 96 NH 99, 70 A2d 909 (1950); House v.
State, 155 Tex Cr 275, 233 SW2d 862 (1950).

*Kaiser Foundation et al,* 226 Or 616, 620, 359 P2d 1090 (1961) (quotations from a medical treatise disallowed) ; *Lemons et al v. Holland et al,* 205 Or 163, 204-05, 284 P2d 1041, 286 P2d 656 (1955) (chart showing average stopping distances for automobiles not admissible) ; *Robertson v. Coca Cola Bottling Co.,* 195 Or 668, 678-80, 247 P2d 217, 223-24 (1952) (report on bottle research disallowed).

It was conceded that the pathologist in the case at bar was qualified as an expert in this field. His knowledge, as with most experts, was necessarily based in part upon studies of the experience, knowledge and laboratory experiments of other experts.[9]

■ We conclude that the case at bar is distinguishable from the above cited Oregon cases in several

---

[9] In this connection, *see,* State Highway Com. v. Arnold et al, 218 Or 43, 70-71, 341 P2d 1089, 343 P2d 1113 (1959), in which the court said, inter alia:

"* * * In stating that the expert witness in testifying as to value may base his opinion in part upon hearsay it is not intended to assert that he may do so in all cases. The limits upon the use of such evidence is well stated in 58 Yale Law Journal 1242, at p 1263, as follows:

" 'Where an opinion is not to be confined to the interpretation of specified data already in evidence, the question of how far an expert may go again depends on the multiple factors of (a) the scope of his expertness, (b) the apparent validity of such hearsay information as he may profess to take into account, and (c) the extent to which the premises for his inferences are based on his own study, experience, and observation, rather than on specific information supplied by other witnesses or evidence in the case. An expert representing a recognized and trusted discipline or science may base conclusions on his general background of study and observation, including the reported data of fellow scientists and technologists, despite its hearsay character. But if the scope of the expert's qualification—or the status of the special discipline which he represents—falls short, then he is likely to be confined to the interpretation of specified data already in evidence.'

"* * * * *."

respects. In *Eckleberry,* a malpractice action, it was held that plaintiff could not (1) show by her own medical expert that a certain medical treatise was a recognized standard medical work in the profession, in order to read excerpts therefrom to the jury, and (2) cross-examine the defendant physician and defendant's medical experts by reading excerpts from the same treatise where defendant's expert testified that he did not rely on and was not familiar with the particular edition of the treatise. Further, unlike the fact situations in *Lemons* and *Robertson,* in the case at bar the witness himself was an acknowledged expert. He was present in court and was cross-examined extensively by defendant's counsel as well as by the court. It is our conclusion that the admission of this testimony here was not an abuse of the trial judge's discretion.

As the court said in *State v. Sturtevant,* 96 NH 99, 104, 70 A2d 909 (1950):

"* * * The witness' personal observations on the subject qualified him to appraise the probable value of the work of others, and it was not error to permit him to disclose the source of information which he was satisfied to adopt. The fact that the source was not shown to be a standard source * * * went to the weight of the testimony rather than its competency. [Citing cases.] Admission of the testimony was not an abuse of discretion."

Defendant's third assignment is that the court erred in denying defendant's motion for a judgment of acquittal, and in finding defendant guilty.

There was evidence which could reasonably lead to the following conclusions:

■ That on the day of the fatal accident defendant and the deceased left Cottage Grove on a motor trip

to the Eugene-Springfield area; that defendant was driving; that defendant and his companion were drinking intoxicating liquor mixed with orange juice as they were traveling; that after a time the pair drove east on the McKenzie River Highway to attend a party being conducted that evening at the home of friends near Blue River; that defendant specifically acknowledged consuming three or four drinks of "mojoe" juice —a mixture of alcoholic liquor and fruit juice, then four or five beers, then two more cups of "mojoe" juice and two more beers during the evening; that defendant and the deceased later left the party about 11:30 p.m. to return to the Eugene-Springfield area, with the decedent riding in the front seat; that the fatal accident occurred a few minutes later; that defendant was driving between 60 and 70 miles per hour in a 50-mile zone and on a curve in the road; that defendant's car then went off the road and crashed into a rock embankment adjacent to the road throwing the deceased into the back seat; that defendant's car traveled on the shoulder some 73 feet before the impact without the defendant having applied his brakes; that the impact caused defendant's car to bounce back on the highway where it was struck by an oncoming car; that the deceased died a few minutes later from injuries which medical testimony showed to be consistent with the blow his body received in the collision with the rocky embankment.

After a review of the entire record we conclude that there was sufficient evidence from which the trier of fact could reasonably find beyond a reasonable doubt that defendant was guilty of the crime of criminally negligent homicide.

Lastly, defendant asserts that the trial judge

erred in denying defendant's motion to strike the following items from the presentence report:

(1) The results of a blood alcohol test taken about four hours after the fatal collision, while defendant was being treated at a hospital. This test showed a blood alcohol level of .14 per cent.

(2) Six entries showing arrests on charges which were subsequently dismissed.

It appears from the record that the trial judge refused to admit the results of the test when offered by the state on rebuttal, in an effort to impeach defendant's prior testimony that he had not consumed any significant amounts of intoxicating liquor.

Defendant argues that inasmuch as the results of the blood alcohol test were ruled inadmissible during trial the same were equally inadmissible in the presentence report.

Defendant's assignment based on the overruling of his motion to strike is without merit.

ORS 137.530 requires the probation officer, when directed by the court, to report on the "circumstances of the offense, criminal record, social history and present condition and environment of any defendant."

■ The rules of evidence which apply during trial have no application to the presentence report. *State v. Scott*, 237 Or 390, 390 P2d 328 (1964).

■ It is not a denial of due process for the trial judge prior to passing sentence to inform himself of matters which are connected with the commission of the crime but which were not developed in the course of the trial. *Admire v. Gladden*, 227 Or 370, 362 P2d 380

(1961), *cert denied* 368 US 971, 82 S Ct 449, 7 L Ed 2d 400 (1962).

The court is also entitled to consider defendant's prior involvements with the law even though those involvements did not result in convictions. *State v. Scott,* supra; *State v. Flores,* 13 Or App 556, 511 P2d 414 (1973). Defendant's arrest record was properly includable in the presentence report. Hearsay statements in such a report may also be included and may be considered by the court. *See, State v. Scott,* supra.

Affirmed.