Argued and submitted October 24,
affirmed December 31, 1979

# STATE OF OREGON,
## *Respondent,*
### *v.*
# JAMES S. CAMPBELL, III,
## *Appellant.*

## (No. 23301, CA 13473)

607 P2d 745

Richard Lee Barton, Portland, argued the cause for appellant. With him on the brief was Barton & Loennig, Portland.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

Defendant appeals from a conviction for criminal activity in drugs, ORS 167.207. He assigns as error the trial court's failure to suppress certain evidence and its use of other, illegally seized evidence in sentencing. We affirm.

On May 12, 1978, a Bend city police officer went to a local motel to investigate a complaint of registering under a false name. After talking with the motel authorities, the officer approached the defendant's room and knocked. The defendant opened the door and took a couple of steps outside it to talk to the officer. The door was not completely closed behind him. While they were talking, the officer smelled what he believed to be a very strong odor of burnt marijuana. After satisfying himself that the matter of the initial complaint was cleared up, the officer asked the defendant to step inside so they could discuss another matter.

Once inside, the officer asked the defendant for the material he was using to smoke the marijuana. The defendant handed him a "roach" which he pulled out from under the bed covers. The officer then asked the defendant for the material he used to make the cigarette. The defendant said that was all he had. The officer repeated his request, this time adding that "if he went through the room he could probably find what he was looking for" and "that he could tear the room apart looking for what he wanted." There was no mention of a search warrant. The defendant went over to his suitcase and brought out a large brown bag of marijuana. The officer advised the defendant that he was taking him to the station, placed him in a patrol car and, for the first time, advised him of his *Miranda*[1] rights.

At the station the defendant signed two waiver cards, one containing his *Miranda* rights and the other a consent to search. The trial court found the waivers

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

[981]

to be invalid and suppressed the defendant's statements made at the police station and the evidence seized in a subsequent second search of the motel room. No appeal was taken from this portion of the order; it concerns us only as it relates to sentencing.

Defendant argues that the bag of marijuana was not admissible evidence because the he was not given his *Miranda* rights before he produced the bag and because his consent to the first search was coerced. We conclude that defendant is correct only in part.

The facts of this case raise both Fourth and Fifth Amendment considerations.

## *FIFTH AMENDMENT*

When defendant walked to his suitcase and showed the officer where the bag of marijuana was located, he performed a verbal act. His actions were the equivalent of saying, "I know where an incriminating amount of marijuana may be found." Like the spoken or written word, verbal acts are entitled to constitutional protection. The question is: did defendant commit this verbal act under circumstances which required that he first be given his *Miranda* warnings?

*Miranda* applies "after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." 384 US at 444. This rule has been applied to the questioning of an individual in his bedroom where he was not free to leave. *Orozco v. Texas,* 394 US 324, 89 S Ct 1095, 22 L Ed 2d 311 (1961).

The test of whether a defendant was in custody for purposes of *Miranda* is an objective test. The relevant factors are: (1) whether the defendant could have left the scene of the interrogation voluntarily, (2) whether he was being questioned as a suspect or merely a witness, and (3) whether the defendant freely and voluntarily accompanied the police to the place of questioning. *State v. Paz,* 31 Or App 851, 859-60, 572 P2d 1036 (1977).

[982]

In this case, the focus is on the first consideration. The issue is whether "when faced with the circumstances in which defendant found himself * * * a reasonable person would have concluded that his freedom was restrained in any significant way." *State v. Armstrong,* 38 Or App 219, 224, 589 P2d 1174 (1979), *rev denied,* 287 Or 129 (1978); *see also, State v. Mitchell,* 35 Or App 809, 814, 583 P2d 14 (1978), *rev denied,* 285 Or 73 (1979).

The trial judge concluded that, after producing the roach, the defendant would have been restrained if he had tried to leave. The officer himself testified that the defendant would not have been permitted to leave without at least being given a citation. The trial court's conclusion will not be disturbed. *See State v. Warner,* 284 Or 147, 585 P2d 681 (1978).

Defendant was "in custody" at the time the officer's interrogation led defendant to show the officer the location of the hidden marijuana. The officer should have advised defendant of his *Miranda* rights. Since he did not, testimony concerning defendant's verbal act should have been suppressed.

Having established that error was committed, we must determine whether the error was harmful. We hold it was not. While knowledge is an element of the offense—*see State v. Oare,* 249 Or 597, 439 P2d 885 (1968)—we see no reasonable inference which could be drawn from the facts in this case except that defendant knew of the presence of the bag of marijuana. The error is harmless beyond a reasonable doubt. *See Chapman v. California,* 386 US 18, 87 S Ct 824, 17 C Ed 2d 705 (1967); *State v. Nulph,* 31 Or App 1155, 572 P2d 642 (1977), *rev den* (1978).

*FOURTH AMENDMENT*

While the verbal act of showing the officer where the marijuana was located is not admissible evidence, the bag of marijuana itself would be if the consent to search were voluntary.

"The question whether a consent to a search was, in fact, voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 US 218, 227, 93 S Ct 2041, 36 L Ed 2d 854 (1973); *State v. Flores,* 280 Or 273, 278, 570 P2d 965 (1977). Knowledge of the right to refuse to consent is not required. Even the fact that defendant is in custody is not dispositive. *United States v. Watson,* 423 US 411, 96 S Ct 820, 46 L Ed 2d 598 (1976); *State v. Flores, supra.*

The officer was in a place he had a right to be. Once he smelled the marijuana he had probable cause to enter the motel room and search the defendant. *State v. Wallace,* 29 Or App 429, 563 P2d 1237 (1977), *State v. Cross,* 23 Or App 536, 543 P2d 48 (1975). A search of the entire apartment would have also been proper.

To justify a non-consensual warrantless search, there must be probable cause and exigent circumstances. *State v. Drouhard,* 31 Or App 1083, 1086, 572 P2d 331 (1977), *rev den* 282 Or 189 (1978). Preventing the loss or destruction of evidence constitutes exigent circumstances. *State v. Eacret,* 40 Or App 341, 345, 595 P2d 490 (1979), *rev den* 287 Or 409 (1979). Exigent circumstances clearly existed in this case. The officer was alone; if he left to get a warrant it was likely that the evidence would be gone when he came back. The officer could have conducted the search himself and found the marijuana. Instead of searching for himself, however, he induced defendant to reveal the marijuana's location by stating that he could tear the room apart looking for it if defendant did not reveal it. The question is: could the officer obtain defendant's "consent" by threatening to do what he was entitled to do?

We hold that he could. This case is governed by our decision in *State v. Bopp,* 16 Or App 604, 519 P2d 1277 (1974), where we held that an officer's statement that he would arrest defendant's girlfriend was not a constitutionally objectionable form of coercion where the

officer could, in fact, have done so. After the officer's statement, the defendant revealed the hiding place of a quantity of hashish. This is a sensible result in these circumstances. As former Chief Justice O'Connell explained in *State v. Douglas,* 260 Or 60, 81, 488 P2d 1366 (1971), *cert denied* 406 US 974 (1972) (dissenting on other grounds):

> "* * * The officer's threat that he could obtain a warrant if defendant did not consent to the search did not constitute the kind of coercion that renders a search involuntary. Concededly such a threat may be coercive in the sense that an accused would not have consented to the search in the absence of the threat. But not all coercion inducing consent to a search is constitutionally impermissible. If the officers threaten to do only what the law permits them to do, the coercion that the threat may produce is not constitutionally objectionable."

*See also State v. Hirsch,* 267 Or 613, 622, 518 P2d 649 (1974); *cf. State v. Roy,* 28 Or App 861, 562 P2d 213 (1977). Under the facts of this case, defendant's consent was valid.[2]

The second issue raised by the defendant is the trial court's consideration of illegally seized evidence in sentencing the defendant.

The Oregon Supreme Court has not yet ruled on this issue. However, in a recent case, *State v. Nettles,* 287 Or 131, 597 P2d 1243 (1979), the court held that the exclusionary rule does not apply to probation revocation proceedings. The rationale of *United States v. Calandra,* 414 US 338, 94 S Ct 613, 38 L Ed 2d 561 (1974) was relied upon:

> "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim:
>
> " '[T]he ruptured privacy of the victims' homes

---

[2] Because of the disposition we make of defendant's contention concerning consent, we are not required to reach the further argument available to the state that, since the officer had probable cause, exigent circumstances and was in a place where he had a right to be, the officer would have inevitably searched for and found the contraband in any event.

[985]

and effects cannot be restored. Reparation comes too late.' *Linkletter v. Walker,* 381 US 618, 637, 14 L Ed 2d 601, 85 S Ct 1731 (1965).

"Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable search and seizures:

" 'The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' *Elkins v. United States,* 364 US 206, 217, 4 L Ed 2d 1669, 80 S Ct 1437 (1960).

"Accord, *Mapp v. Ohio,* [367 US 643, 656, 6 L Ed 2d 1081, 81 S Ct 1684, 84 ALR2d 933 (1961)], *Tehan v. Shott,* 382 US 406, 416, 15 L Ed 2d 453, 86 S Ct 459 (1966); *Terry v. Ohio,* 392 US 1, 29, 20 L Ed 2d 889, 88 S Ct 1868 (1968). In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.

"Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served. The balancing process implicit in this approach is expressed in the contrours of the standing requirement. Thus, standing to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search. *Brown v. United States,* 411 US 223, 36 L Ed 2d 208, 93 S Ct 1565 (1973); *Alderman v. United States,* 394 US 165, 22 L Ed 2d 176, 89 S Ct 961 (1969); *Wong Sun v. United States* [371 US 471, 9 L Ed 2d 441, 83 S Ct 407 (1963)]; *Jones v. United States,* 362 US 257, 4 L Ed 2d 697, 80 S Ct 725, 78 ALR2d 233 (1960). This standing rule is premised on a recognition that the need for deterrence and hence the rationale for excluding the

evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search.

"In deciding whether to extend the exclusionary rule to grand jury proceedings, we must weigh the potential injury to the historic role and functions of the grand jury against the potential benefits of the rule as applied in this context. It is evident that this extension of the exclusionary rule would seriously impede the grand jury. * * * .

"* * * * *.

"Against this potential damage to the role and functions of the grand jury, we must weigh the benefits to be derived from this proposed extension of the exclusionary rule. Suppression of the use of illegally seized evidence against the search victim in a criminal trial is thought to be an important method of effectuating the Fourth Amendment. But it does not follow that the Fourth Amendment requires adoption of every proposal that might deter police misconduct. * * *." (Footnotes omitted.) *United States v. Calandra,* 414 US 338 at 347-350. *State v. Nettles, supra,* 284 Or at 137-138. *See also Uunited States v. Winsett,* 518 F 2d 51 (9th Cir 1975).

The same reasoning applies to this case. The potential benefits of extending the exclusionary rule to sentencing must be weighed against any injury to the sentencing process. *See United States v. Vandemark,* 522 F 2d 1019 (9th Cir 1973).

In *United States v. Schipani,* 435 F 2d 26, 28 (2nd Cir 1970), *cert denied,* 401 US 983 (1971), the second circuit stated that "the purpose of the exclusionary rule is, of course, to discourage unconstitutional acts by law enforcement officials." That court concluded that "applying the exclusionary rule for a second time at sentencing after having already applied it once at the trial itself, would not add in any significant way to the deterrent effect of the rule." *Id.,* at 28. The Ninth Circuit came to the same conclusion in *United States v. Vandemark, supra,* at 1022, where they held that the exclusionary rule should not apply to sentencing after revocation of probation.

[987]

The harm to the sentencing process is that the judge would not have access to all relevant evidence. This court has stated that the same rules of evidence are not applicable to both the trial and sentencing. *State v. Woolery,* 16 Or App 180, 187, 517 P2d 1212 (1974). This is because "the sentencing court must be provided with a great variety of information in order that it can perform its most burdensome function." *State v. Scott,* 237 Or 390, 390 P2d 328 (1964). Thus, a sentencing court may consider an individual's arrest record and hearsay evidence though such matters are not admissible at trial.

The U. S. Supreme Court in *Williams v. New York,* 337 US 241, 247, 69 S Ct 1079, 93 L Ed 1337 (1949), stated:

> "A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial."

The cases the defendant relies upon can be distinguished. In *Verdugo v. United States,* 402 F 2d 599 (9th Cir 1968) the court held that illegally seized evidence could not be considered at sentencing. In that case, however, it was clear that the evidence was seized not for conviction purposes but only to enhance the defendants sentence. The same court later explained *Verdugo* by saying,

> "although *Verdugo* places some restrictions upon the information which the sentencing judge may consider, it does not hold that evidence seized in violation

of the Fourth Amendment may never be considered in sentencing." *United States v. Vandemark, supra,* at 1022.

We express no opinion as to whether we would observe the *Verdugo* distinction in an appropriate case. We only note that this is not such a case. We agree with the court in *Schipani, supra,* 435 F2d at 28, that "where the illegally seized evidence is reliable and it is clear that it was not gathered for the express purpose of improperly influencing the sentencing judge there is no error in using it in connection with fixing sentence."

In this case the trial court specifically found that the second search, which yielded the illegally obtained evidence, was part of a continuing investigation for the purpose of obtaining a conviction. The evidence was not seized to enhance the defendant's sentence. It was properly considered by the trial judge in sentencing the defendant.

Affirmed.