**Joel Anthony ELSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4967.**

Court of Appeals of Alaska.

Sept. 10, 1981.

Eric M. Safire, Asst. Public Defender, Kenai, and Brian Shortell, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Joel Elson appeals his conviction and sentence of twenty-one months for possession of cocaine in violation of AS 17.10.010. He alleges that the trial court erred in admitting into evidence cocaine which he contends was the product of an illegal search and seizure of his person; that the trial court erred in permitting testimony that he resisted the search as circumstantial evidence to show that he knowingly possessed the cocaine; that the trial court erred in

considering at his sentencing evidence that he possessed cocaine on an occasion subsequent to his arrest in the instant case which evidence he claims was the product of an illegal search and seizure; and that the trial court erred in imposing an excessive sentence. We affirm Elson's conviction and sentence.

While on traffic patrol in Sterling, Alaska, at 10:00 p. m. on February 23, 1979, Trooper Robert Scott clocked a car driven by Elson traveling 63 miles per hour in a 45 mile per hour zone. Scott stopped Elson's car and upon contacting Elson detected the odor of alcohol and observed that Elson's eyes were bloodshot and watery. He had Elson get out of the car and administered field sobriety tests. Scott then placed Elson under arrest for operating a motor vehicle while under the influence of alcohol. As he began to pat Elson down for weapons prior to transporting him to the Kenai police station, he felt a hard object about one to one and one-half inches wide and three inches long in Elson's right pants pocket. Thinking that it was a knife, Scott started to retrieve it, but as he did so, Elson, with his right hand, grabbed Scott's hand to prevent its entering his pocket. Scott put Elson's hands back on the trunk of his car, reached into the pocket, and pulled out a "Bic" lighter and an item which Scott indicated was a cocaine snifter. Both items came out at the same time.

The area where Scott stopped Elson was dark, but Scott testified he could see that one object was a cocaine snifter, and held it up to a streetlight to see if anything was inside it. According to Scott the snifter consisted of a brown glass vial with a specially designed clear plastic top. Scott could not see anything in the brown glass vial, but did observe a white residue sticking to a cone-shaped funnel which was part of the plastic top. Once he had transported Elson to the police station, he "field tested" the residue. It tested out as cocaine. The results were verified by the state's chemist, and Elson subsequently was indicted for possession of cocaine.[1] He moved to suppress reference to the vial, and the motion was denied by the superior court.

## THE EXAMINATION OF THE VIAL

■ Elson concedes that Scott could both pat him down for weapons and reach into his pocket to retrieve what he thought was a knife,[2] but argues that once Scott retrieved the object from his pocket and saw that it was not a knife, Scott's safety was protected and there was no justification for any further search. Although Scott then legitimately possessed the vial, Elson argues that by holding it up to the light Scott "significantly expanded the scope of his constitutional intrusion." Elson thus contends that raising the vial to the light constituted a second impermissible search for which Scott should have obtained a warrant. As authority for this proposition, Elson cites *Anderson v. State*, 555 P.2d 251 (Alaska 1976).

In *Anderson*, police officers, armed with a warrant to arrest Anderson on charges of lewd and lascivious acts committed toward a child and a warrant to search his home for marijuana and related paraphernalia, discovered a slide projector with a number of photographic negatives mounted as slides in a tray on a shelf in his apartment. Inspection of the slides by holding them up to the light revealed photographs of nude male children and ultimately furnished the state with the identities of the two chief witnesses whose testimony was used to convict Anderson. The supreme court concluded that the slides could not be considered to have been in the "plain view" of the officers. The court characterized the issue as "how much movement, probing or testing of an apparently innocuous object, aimed at uncovering an incriminating characteristic, is permitted." *Id.* at 256–57. Relying on

---

1. Elson was later acquitted on the OMVI charge.

2. It is well established that officers may make a search of the person for weapons incidental to a valid arrest. *McCoy v. State*, 491 P.2d 127, 133 (Alaska 1971); *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969).

*Daygee v. State*, 514 P.2d 1159 (Alaska 1973), and *Erickson v. State*, 507 P.2d 508 (Alaska 1973), the court concluded:

> Unlike the bag of marijuana in *Daygee* which would have been visible in the light of day, the slides seized by the officers here were equally innocuous in day or night. The slides were in an open tray on a shelf on a wall of the room. There was nothing about them to suggest that they contained marijuana or drug paraphernalia as set forth in the search warrant. "But for" the action of the officers in lifting them to the light, the incriminating nature of the slides would not have been revealed. The activity by the police officers here falls, analytically, between the opening of the suitcase in *Erickson* and the shining of the flashlight in *Daygee*. While in each of these cases the incriminating nature of the items eventually seized required some action on the part of the officers to be revealed we found the conduct of the police in *Erickson* to be violative while in *Daygee*, we found the officer's actions permissible.

*Anderson v. State*, 555 P.2d at 257–58 (footnotes omitted).

In *Daygee*, the arresting officer shone his flashlight into the defendant's car following a valid traffic stop and in so doing observed a plastic bag of marijuana in its interior. The court concluded that its subsequent seizure was not an illegal search and seizure:

> [T]he bag was in the officer's plain view. A search implies an invasion of privacy, a prying into that which was meant to be concealed. It is no search to observe that which is in the plain view of an officer who is rightfully in a position to have that view. That the officer's view in this case was aided by a flashlight is irrelevant. The flashlight merely illuminated that which would have been visible in the light of day. Nor does the seizure of the marijuana which the officer saw violate the seizure restriction of the fourth amendment. An officer may seize evidence which is legitimately in his plain sight. It is not necessary that the contra-

> band be positively identified before it is seized.

514 P.2d at 1162–63 (footnotes omitted).

■ We agree with Elson that *Anderson* is dispositive of this case, but we reach a different result. Trooper Scott's testimony was unequivocal that at the moment he saw the cocaine snifter, he knew what manner of object he held. Unlike the *Anderson* slides, Elson's cocaine snifter was not an innocuous object but was one that was highly incriminating. Scott testified that he had seen cocaine snifters before, both in the field and in training. It is true that to see the cocaine residue it was necessary for Scott to lift the snifter up to the streetlight, but we regard this action as similar to the officer's use of the flashlight to illuminate the inside of the car in *Daygee*: the residue would have been visible by the light of day. Under the circumstances, we do not believe that Trooper Scott's raising a highly suspicious object to a street light at night constitutes an unreasonable search.

In his supplemental brief, Elson urges that *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), is applicable to the facts here. In *Walter*, the defendant shipped twelve sealed packages from Florida to Georgia where "Leggs, Inc.," a cohort of defendant's, was to pick them up. The packages contained 871 boxes of eight millimeter homosexual movies and were mistakenly delivered to L'Eggs Products, Inc., whose employees opened the cartons and discovered their contents. Each film box had on its side suggestive drawings and an explicit description of the box's contents. One employee unsuccessfully attempted to view portions of the film by removing one or two from their boxes and holding them up to the light. Shortly thereafter the packages were turned over to the FBI, whose agents viewed the films with a projector without obtaining a warrant. The court concluded that this was impermissible, basing its decision on the scope of the private party's search. It noted that:

> [T]he Government may not exceed the scope of the private search unless it has

the right to make an independent search. In these cases, the private party had not actually viewed the films. Prior to the Government screening, one could only draw inferences about what was on the films. The projection of the films was a *significant expansion of the search that had been conducted previously* by a private party and therefore must be characterized as a separate search. That separate search was not supported by any exigency, or by a warrant even though one could have been easily obtained.

*Id.* at 657, 100 S.Ct. at 2402, 65 L.Ed.2d at 418 (footnotes omitted; emphasis added).

We find *Walter* inapplicable to the facts of the present case. The exposed portion of the *Walter* film, that part containing the actual images, was approximately four millimeters wide. *Id.* at 652 n. 2, 100 S.Ct. at 2399 n. 2, 65 L.Ed.2d at 414 n. 2. It was obviously a significant expansion of the previous private search for the FBI agents to project mechanically these images in order to make them visible to the eye. We do not believe that Officer Scott's actions in examining a highly suspicious article he rightfully held is such an expansion of the search of Elson as to be constitutionally impermissible.

## EVIDENCE OF ELSON'S REFUSAL TO PERMIT A SEARCH

At Elson's trial on the possession charge, his attorney sought a protective order preventing mention of Elson's attempt to keep Trooper Scott from searching his pocket. This request was denied by the trial judge. Elson argues that this evidence was inadmissible because his behavior manifested a refusal to permit an unconstitutional search and that under *Bargas v. State*, 489 P.2d 130 (Alaska 1971) and *Padgett v. State*, 590 P.2d 432 (Alaska 1979), such a refusal has been deemed violative of the right against unreasonable searches and seizures.

The *Bargas* rule is that evidence of an assertion of one's constitutional right not to have one's privacy invaded cannot be used against him to help establish guilt because "it would make meaningless the constitutional protection against unreasonable searches and seizures if the exercise of that right were allowed to become a badge of guilt." *Bargas v. State*, 489 P.2d at 132. The rule was reiterated in *Padgett*, wherein the court stated, "That right [against unreasonable searches and seizures] would be effectively destroyed if, when exercised, it could be used as evidence of guilt." 590 P.2d at 434.

■ We find that *Bargas* and *Padgett* do not apply to the facts of Elson's case. It is uncontested that Trooper Scott's actions were proper in searching Elson for weapons incident to the arrest for operating a motor vehicle under the influence of alcohol. Elson's resistance to the search cannot therefore be construed as the exercise of a constitutional right to resist an unlawful search.[3]

---

**3.** Elson also argues that evidence that he reached toward his pocket just before Scott searched it should not have been allowed because later, at the police station, three vials containing cocaine were found in the same pocket in which the cocaine snifter was found. These vials were later suppressed by the superior court for being seized in violation of the rule in *Zehrung v. State*, 569 P.2d 189 (Alaska 1977). However, the fact that these additional vials of cocaine were later suppressed does not change the fact that Trooper Scott's search incident to Elson's arrest was proper and that Elson had no right to resist this search. Elson also claims that it is more likely that he resisted the officer because he was concerned about the three vials of cocaine in his pocket which were later suppressed, not about the snifter with the small trace of cocaine in it. He also

claims he was unable to adequately cross-examine Scott about the incident where Elson reached toward his pocket to prevent the search without mentioning the three vials which were suppressed. We believe that Elson's resistance to the search was relevant to show that Elson had knowledge that his pocket contained cocaine. This relevance is not changed by the fact that Elson may have had more cocaine in his pocket than the officer initially discovered. Obviously Elson did not want to argue to a jury that the reason he resisted the search was his knowledge of the cocaine in the three vials which were suppressed, not the small amount of cocaine admitted as evidence. Elson received the benefit of the exclusionary rule as to the three vials which were suppressed. We do not think it would be appropriate in this case to exclude

Elson also argues that the trial court should have excluded the evidence of his resistance to the search because the probative value of that evidence was outweighed by the danger of unfair prejudice.[4] We disagree. Elson's resistance to the search was relevant to show his knowledge that he had cocaine in his pocket. Usage of such evidence where not in conflict with the right to prevent an unconstitutional search is permitted in most jurisdictions and is considered an admission by conduct. C. McCormick, Law of Evidence § 271, at 655 (2d ed. 1972). Although there certainly are other possible explanations for Elson's resistance to the search, on balance we fail to see that Elson has a strong claim that he suffered unfair prejudice from admission of the testimony of his resistance to the search. Questions of balancing the probative value of evidence against unfair prejudice are within the discretion of the trial judge and the trial judge's ruling is reversible only for an abuse of discretion. *Doisher v. State*, 632 P.2d 242 (Alaska App., 1981). We do not find that the admission of testimony about Elson's resistance to the search was an abuse of discretion and therefore we find no error.

## THE DENIAL OF THE MOTION FOR JUDGMENT OF ACQUITTAL

Following the presentation of the state's case, Elson moved for judgment of acquittal, basing his motion on the state's failure to prove the element of knowledge required by AS 17.10.010[5] and on his claim that there was an insufficient quantity of the substance for proper identification. The motion was denied.

In reviewing the denial of a motion for judgment of acquittal, this court must consider the evidence and the reasonable inferences arising therefrom in the light most favorable to the state and determine if fair-minded jurors in the exercise of reasonable judgment could differ on the question whether guilt has been established beyond a reasonable doubt. If jurors could so differ, then the case was properly submitted to the jury. We must consider the entire record, not just the prosecutor's case in chief, regardless of when the motion for acquittal was made. *Davis v. State*, Op. No. 23 at 2 (Alaska App., May 21, 1981). This standard is relevant whether the evidence presented is direct or circumstantial. *Eben v. State*, 599 P.2d 700, 704 n.8 (Alaska 1979).

Elson first contends that there was insufficient evidence for the jury to conclude that his possession of cocaine was committed with the knowledge that he possessed it. The evidence presented at trial showed that Elson possessed in his right front pocket a vial which contained a small amount of substance which was identified as cocaine by an expert witness.[6] Trooper

---

the independently relevant evidence of his resistance to the search where the resistance was so closely related to the legally seized cocaine snifter.

4. Alaska R.Evid. 403 reads as follows:

    Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

    Alaska R.Evid. 403 had not been adopted at the time this case was tried, but the rule merely codifies the court's common law powers. *See* Commentary, Alaska R.Evid. 403.

5. AS 17.10.010 provides:

    *Acts prohibited.* It is unlawful for any person to manufacture, possess, have under

his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter. "Knowing possession" is required under *Davis v. State*, 501 P.2d 1026 (Alaska 1972).

6. "Possession of even a trace of a prohibited drug may be sufficient to sustain a conviction where other evidence supports the inference of knowledge. Where the prohibited substance is itself mixed with or contained within an innocuous substance or object, it is necessary that the state prove the defendant's knowledge of the . . . character of the substance. A defendant's knowledge of the . . . character of a substance can be shown by inferences that can be reasonably drawn from facts in evidence."

*Moreau v. State*, 588 P.2d 275, 285 (Alaska 1978) (footnotes omitted).

Scott testified that the vial was a cocaine snifter. He indicated that he had seen similar containers before and that these containers usually contained cocaine. Scott also testified that when he went to search Elson's pocket, Elson grabbed his hand and tried to prevent the trooper from searching it. Taking the evidence in the light most favorable to the state, we conclude that fair-minded jurors could differ on the question of whether the state had proven beyond a reasonable doubt that Elson's possession of cocaine was committed with the knowledge that he possessed the prohibited substance. We therefore conclude that this issue was properly submitted to the jury.

Elson next argues that the state did not prove beyond a reasonable doubt that the drug he possessed was cocaine and that the trial court erred in not granting his motion for judgment of acquittal on that ground. He contends that the tests run by the state's chemist, Chris Beheim, were not sufficient to positively identify the substance he possessed as cocaine. He specifically contends the tests were inadequate because Beheim had an insufficient amount of substance to perform a test for cocaine on an infrared spectrometer. However, Beheim testified the four tests he conducted, as well as the earlier field test by Trooper Scott, all indicated the presence of cocaine. Beheim observed that there were only a few milligrams of the substance, not enough to conduct a weighing. He noted that the infrared spectrometer test was highly specific for cocaine but that he never relied on just one test. In his opinion, it was "not a possibility" that the substance he tested was not cocaine. On cross-examination, he observed that three of the tests he conducted, two thin-layer chromatographies and one gas chromatography, were not specific for cocaine, but disagreed with an assertion by Elson's attorney that the fourth, a microcrystal test, was non-specific.

Given this testimony, we conclude that there was sufficient evidence for the jury to conclude beyond a reasonable doubt that the substance which Elson possessed was cocaine. We therefore hold the trial court did not err in refusing to grant Elson's motion for judgment of acquittal on this ground.

## THE SENTENCE APPEAL

Elson attacks his sentence on three grounds. First he argues that the sentencing judge should not have considered evidence that Elson was in possession of cocaine on May 20, 1979, a date following his charge but before his sentencing on the instant case. Elson alleges that this evidence was the product of an illegal search and seizure and therefore should not have been considered by the court to enhance his sentence. Next, he claims that the chemist who tested this cocaine should not have testified by telephone at the sentencing. Finally, he asserts that his sentence of twenty-one months was excessive.

### A. The Admissibility of Illegally Seized Evidence

On May 20, 1979, two months before trial, Elson was arrested for assault and battery, carrying a concealed weapon, and operating a motor vehicle while under the influence of alcohol. He was taken to the Kenai Police Station where he was placed in a room from which prisoners could see and communicate via telephone with visitors. While in the room, Elson ripped all the telephones out. The officers removed him from the room and immediately searched him, discovering a clear ziplock bag containing a white powder. The bag was placed with the rest of Elson's property and he was charged with malicious destruction of property. Meanwhile, police officers obtained a search warrant for the ziplock bags, seized the bags and sent them to the crime lab for analysis. Mr. Beheim tested the substance, which tested out as cocaine. Again there was not enough to weigh and Beheim was unable to conduct an infrared spectrometer test.

Prior to the introduction of this evidence at sentencing, Elson's counsel made a motion to conduct an evidentiary hearing before a different judge to determine whether

the evidence was properly seized.[7] His request was denied but Elson was allowed to present testimony concerning the arrest and incarceration which led to the seizure of the cocaine on May 20, 1979. The court admitted the evidence of Elson's cocaine possession on May 20, 1979, and stated specifically at the end of sentencing that it had considered the evidence in fashioning Elson's sentence.

■ The record does not reflect that the trial judge made any determination whether the evidence of Elson's cocaine possession on May 20, 1979 was the product of an illegal search and seizure. We therefore will assume, since the trial court made no finding, that the evidence of Elson's subsequent possession of cocaine was the product of an illegal search and seizure. The question before us then is whether evidence which has been the product of an illegal search in violation of the Fourth Amendment to the United States Constitution [8] or Article 1 § 14 of the Alaska Constitution [9] may be used to enhance a sentence. We conclude that where the illegally seized evidence is reliable, where the police conduct

involved in obtaining the evidence does not shock the conscience of the court,[10] and where it is clear that the evidence was not obtained for purposes of influencing the sentencing judge, illegally seized evidence may be considered in fashioning a sentence.

We first note that the Alaska Rules of Evidence do not require exclusion of illegally seized evidence at sentencing. Although Rule 412, in effect at the time of Elson's sentencing,[11] provides that illegally obtained evidence "shall not be used over proper objection by the defendant in a criminal prosecution for any purpose ...," Rule 101(c)(2) provides specifically that the evidence rules "do not apply to proceedings related to ... sentencing, probation or parole." The commentary to Rule 101 observes that its strictures "[do] not decide the reach of constitutional principles as applied to admission of illegally seized evidence."

Since the evidence rules do not apply to a sentencing situation we next examine the general purposes of the exclusionary rule to determine whether the Alaska or the United States Constitutions require the exclu-

---

7. Elson argued the evidence should be suppressed because it was seized in violation of the rule in *Zehrung v. State*, 569 P.2d 189 (Alaska 1977). In *Zehrung*, the supreme court held that "a warrantless jailhouse inventory is without justification when an arrestee is not going to be incarcerated, and ... is therefore constitutionally impermissible." 569 P.2d at 193.

8. The Fourth Amendment to the United States Constitution provides as follows:

> *Searches and seizures.* The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

9. Article 1 § 14 of the Alaska Constitution provides as follows:

> *Searches and Seizures.* The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describ-

ing the place to be searched, and the persons or things to be seized.

10. The supreme court in *State v. Sears*, 553 P.2d 907, 914 (Alaska 1976) indicated that it would apply the exclusionary rule to "police conduct which shocks the conscience, or is of a nature that calls for the judiciary, as a matter of judicial integrity, to disassociate itself from the benefits derivable therefrom ...."

11. We believe the same result would apply under former Alaska R.Crim.P. 26(g), which was in effect at the time the evidence was seized and at the time of Elson's trial. Alaska R.Crim.P. 26(g) was substantially the same as Alaska R.Evid. 412 and reads as follows:

> Evidence illegally obtained shall not be used for any purpose including impeachment of a witness. .

Former Criminal Rules 1 and 2 provided that the rules applied to "all criminal proceedings." Although it was not clear under the former rules if sentencing was a "criminal proceeding," current Alaska R.Evid. 101(c)(2) specifically states that the criminal rules do not apply to sentencing and that appears to have been the intent of the former rules as well.

sionary rule to be applied where illegally seized evidence is used in sentencing. In *State v. Sears*, 553 P.2d 907, 914 (Alaska 1976) the supreme court held that illegally seized evidence could be used in a probation revocation proceeding as long as it was clear the seizure of the evidence was not done in such a way as to shock the conscience and where it was clear the police did not obtain the evidence for use in a probation proceeding. In arriving at this conclusion the court first set forth the two purposes of the exclusionary rule:

> In regard to the purpose of the exclusionary rule, federal precedent and our own decisions establish that the rule has twin rationales. One of these rationales is deterrence of unconstitutional methods of law enforcement. The other rationale is the imperative of judicial integrity which requires that the courts not be made "party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions."

*Id.* at 911–12 (footnotes omitted). The court went on to conclude that "invocation of the exclusionary rule in probation revocation proceedings would yield only a minimal additional deterrent effect which is outweighed by the needs of our probation system." *Id.* at 912. We similarly conclude that the requirements of the court system for sentencing outweigh the benefit that would be obtained from applying the exclusionary rule to sentencing proceedings.

In a sentencing proceeding it is critical that the judge has available a great deal of information in order to fashion an appropriate sentence. In *Nukapigak v. State*, 576 P.2d 982, 984 (Alaska 1978), the supreme court quoted with approval the following language from the United States Supreme Court:

> Highly relevant—if not essential—to [a trial judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to [a] trial.[12]

Illegally seized evidence is normally not suppressed because it is unreliable. It is suppressed because the court is attempting to protect people's privacy by deterring any incentive for illegal police conduct which may impinge on that privacy. Illegally seized evidence is often highly probative and extremely valuable in aiding a court in passing a fair sentence. We also believe that applying the exclusionary rule indiscriminately to evidence which is used at sentencing would have a minimal impact on deterring any illegal police conduct which has not already been deterred by the rules preventing the use of illegally seized evidence at trial.

We therefore concur with the conclusion of the Second Circuit Court of Appeals which held:

> When illegally seized evidence is reliable and it is clear . . . that it was not gathered for the . . . [13] purpose of improperly influencing the sentencing judge, there is no error in using it in connection with fixing sentence.[17]

*United States v. Schipani*, 435 F.2d 26, 28 (2d Cir. 1970) (footnote added).[14] We there-

---

12. The language quoted is from *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949) (footnote omitted).

13. We eliminated the word "express" from the quote because we feel that word may have connotations that the illegally seized evidence must be gathered solely with the idea that it would be used in sentencing. The notion as we see it is one of common sense. If it is clear that the violation of the exclusionary rule was

not made significantly more likely because the police knew that even if the evidence was suppressed it could be used at sentencing, then the evidence should be admitted. This discussion assumes the court finds that the police conduct involved in obtaining the evidence does not shock the conscience. *See* note 10 *supra*.

14. The ninth circuit has held that illegally seized evidence may not be used at sentencing in a case where the incentive for the police to gather illegal evidence was strong and the po-

fore find the trial court did not commit error in considering for purposes of sentencing the evidence of Elson's possession of cocaine on May 20, 1979.[15]

### B. Telephone Testimony of the State Chemist

Chemist Chris Beheim testified at sentencing about the tests he had run on the substance found in the ziplock bag found in Elson's pocket at the police station. Elson's attorney objected to Beheim's testimony because Beheim was not present but was testifying over the telephone from Anchorage to the Kenai courtroom and the attorney could not observe his demeanor. The court overruled the objection, noting for the record that:

> [S]ince the matter was heard by the court in July after a jury trial, the defendant was found guilty, this matter was subsequently set for sentencing and removed from the calendar. I have had to travel here from King Salmon expressly for the purpose of sentencing and rearrange the plane schedules twice and have taken—am taking the testimony of this witness concerning the contents of a substance seized from the defendant as has been previously testified to. It's a fairly technical nature, and it's my understanding there is a lab report. If he can refer to it and have it introduced into evidence . . . . and speak from that, the objection will be overruled.

Counsel again objected when Beheim testified from laboratory notes that had not been turned over to the district attorney. A copy of the lab report itself, however, was apparently available at sentencing. El-

son alleges in this appeal that the telephone testimony deprived him of his right of confrontation. This argument has little merit. The critical question at sentencing for a convicted individual confronted with adverse assertions is whether he has the opportunity to rebut the information. Elson had such an opportunity. His attorney had access to the chemist's lab report and questioned Beheim thoroughly regarding the tests conducted. We believe there was no error. *Nukapigak v. State*, 562 P.2d 697 (Alaska 1977), *aff'd on rehearing*, 576 P.2d 982 (Alaska 1978).

### C. The Excessive Sentence

Elson's final contention is that his sentence of twenty-one months is excessive. Elson cites *Wharton v. State*, 590 P.2d 427 (Alaska 1979), to support his contention that his sentence was excessive. In *Wharton*, the supreme court reduced a sentence of one year imprisonment to a sentence of probation under the suspended imposition of sentence statute. Elson argues that Wharton's case, like his, involved possession of a small amount of cocaine. Both involved young offenders: Wharton was 18, Elson 19. However, there the similarity ends. Where Wharton had no prior record, Elson had misdemeanor convictions for assault and battery and malicious destruction of property in addition to a conviction for assault as a juvenile. Wharton's possession of cocaine was apparently a single, isolated incident. However, in Elson's case the presentence report indicated that Elson's involvement with cocaine was on a more than casual basis. The evidence of Elson's subsequent possession of cocaine which was

---

lice were aware that the additional evidence would be useful to enhance the defendant's sentence. *Verdugo v. United States*, 402 F.2d 599 (9th Cir. 1968), *cert. denied*, 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971). However, it appears that the ninth circuit would not allow illegally seized evidence to be used at sentencing "only where the contrary result would provide a substantial incentive for illegal searches . . . ." *United States v. Vandemark*, 522 F.2d 1019, 1023 (9th Cir. 1975).

The state courts which have considered this problem appear to allow illegally seized evidence to be used at sentencing. *State v. Camp-*

*bell*, 43 Or.App. 979, 607 P.2d 745, 748 (1979); *State v. Swartz*, 278 N.W.2d 22 (Iowa 1979); *State v. Banks*, 157 N.J.Super. 442, 384 A.2d 1164, 1168–69 (1978). However, California does not allow illegally seized evidence to be used at sentencing under a statutory provision. *People v. Belleci*, 24 Cal.3d 879, 157 Cal.Rptr. 503, 598 P.2d 473 (1979).

**15.** Elson has not claimed in the trial court or on appeal that the search of his person on May 20, 1979, was performed for the purpose of influencing the sentencing judge.

presented at sentencing provided verification of this view and also provided a basis for the trial judge to conclude that a substantial jail sentence was necessary to deter Elson. We conclude that the sentence imposed was not clearly mistaken.

The judgment is AFFIRMED.