Argued and submitted June 24, affirmed July 24, 1979

STATE OF OREGON,
*Respondent,*
*v.*
DAVID MARSHALL NETTLES,
*Petitioner.*

(Nos. 75-4900; 75-4902, CA No. 10553; 110555,
SC No. 26025)

597 P2d 1243

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for petitioner. With her on the briefs was Gary D. Babcock, Public Defender, Salem.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

HOLMAN, J.

## HOLMAN, J.

After the suspension of the imposition of the sentences on two separate charges of illegal sale of narcotics, defendant was placed on probation on each charge. During the probationary period the probations were revoked and he was sentenced to two concurrent 10-year terms. Defendant appealed the revocations to the Court of Appeals, which affirmed the circuit court's decision. 37 Or App 511, 588 P2d 688 (1978). Defendant's petition for review to this court was allowed.

Defendant contends the trial court erred in failing to quash the evidence which was the basis for the revocation of his probations. There was evidence from which the trial judge could have found that a Eugene city police officer, while driving a police vehicle, observed defendant, whom he recognized, driving his automobile within the city. The officer knew at that time that there was an outstanding warrant for defendant's arrest. The officer turned on his overhead police light and followed defendant's vehicle into a parking lot. As he did so he observed defendant lean to the left in the seat of his automobile and place his right hand toward his right hip pocket. He could not see exactly what defendant was doing because of the back of the front seat. Defendant got out of his vehicle while taking his billfold from his breast pocket. The officer arrested defendant upon the warrant, handcuffed him and immediately searched the seat of defendant's vehicle and found a parcel of cocaine under the center armrest in the front seat. Defendant contends the search of his vehicle and the resultant seizure of the cocaine were illegal because the search was conducted without a search warrant and the search was not necessary as an incident to his arrest which took place outside of his vehicle.

The state contends that because defendant filed no formal motion in the probation revocation proceeding to quash the evidence nor made any objection in that

[133]

proceeding to evidence of the cocaine's discovery or to the cocaine's introduction as an exhibit, he has no standing to raise the issue on appeal. However, at the conclusion of the probation hearing, the attorney representing the defendant said in argument to the court as follows:

"If it please the Court, the defendant has filed, of course, a motion to suppress in the instant case underlying this probation violation. Now, Oregon has basically adopted the rule that a diminution of the Fourth Amendment protection can be justified only by the extent necessary — excuse me, necessitated by the legitimate demands of the operation of the parole or probation process. There was not a demand of the parole and probation process, it was an exploratory search. There was no justification for a search. It wasn't even an inventory search. Even a person on probation has certain constitutional rights and his constitutional rights were violated by the nature of this search. * * *.

"* * * * *.

"THE COURT: Anything further for the State?

"MR. LARSON: Well, I think number one, there's a substantial question as to whether or not search and seizure provisions apply to this kind of matter.

"Secondly, there has been no motion to suppress filed in this proceeding.

"If I understand STATE V. ROBINSON and all the other Supreme Court cases, both federal and state, the officer clearly was within his rights to perform the search that he did perform, particularly in light of the fact that it's a vehicle and, secondly, that it's incident to an arrest, and we have these furtive movements that were observed going directly to exigent circumstances concerning that."

The trial court thereafter said nothing about suppression of the evidence and made no ruling concerning that issue other than what is implied by the revocation of the probations.[1]

---

[1] Evidence of the discovery of the cocaine was subsequently quashed in the prosecution of the criminal charge arising out of its discovery, and

■ ORS 137.550(2) states, in part, as follows:

"* * * The probation officer shall forthwith report such arrest or detention to the court and submit to the court a report showing in what manner the probationer has violated his probation. Thereupon the court, *after summary hearing,* may revoke the probation and suspension of sentence and cause the sentence imposed to be executed or, if no sentence has been imposed, impose any sentence which originally could have been imposed. * * * " (Emphasis added.)

It is our conclusion that under the provision for a summary hearing in such situations, it is not necessary that a formal motion to quash the evidence be made in order to raise the issue but that it is sufficient if, before the court rules on the revocation, defendant makes it known to the court that he contends the evidence at the hearing demonstrates that the evidence justifying the revocation was illegally seized.

We will assume that the search was not incident to defendant's arrest and that there were insufficient exigent circumstances to justify the failure to secure a warrant to search defendant's vehicle. This raises the issue whether the exclusionary rule should be extended to probation revocation proceedings. Neither this court nor the United States Supreme Court has ever addressed this issue.[2] The vast majority of courts which has addressed it has refused to so extend the exclusionary rule. *See* Annotation at 77 ALR3d 636

---

defendant contends that the ruling in that case collaterally estopped the state from using evidence of the cocaine as a basis for the revocation of the probations. He cites no authority for an *ex post facto* application of collateral estoppel and we hold it cannot be so applied. Defendant has attached several documents from the suppression hearing in the criminal case, but we refuse to consider them, that hearing being subsequent to the revocation proceeding. Defendant must make his record, upon which he now depends, in the revocation proceeding.

[2] Defendant depends upon Article I, section 9, of the Oregon Constitution and the fourth amendment to the Constitution of the United States. It has been the custom of this court to give the Oregon provision substantially the same construction as that required by the United States Supreme Court of the fourth amendment.

[135]

and 30 ALR Fed 824. In *United States v. Winsett,* 518 F2d 51, 30 ALR Fed 817 (9th Cir 1975), the Court said that the exclusionary rule was not based upon a personal constitutional right but was a judicially created remedy designed to deter future unlawful police conduct and that the rule was not for the purpose of compensating for the unlawful invasion of a person's privacy. It termed the rule as being one calculated to prevent—not to repair. The Court said that it must first be determined whether the application of the rule to probation revocation proceedings would produce any deterrent benefits and, if the benefits were nonexistent or minimal, then exclusion would be unwarranted. On the other hand, if the extension of the rule would achieve some deterrence, this "must still be balanced against the potential injury to the function of the proceedings in which the allegedly illegal obtained evidence is to be admitted or used." 518 F2d 53-54, *citing United States v. Calandra,* 414 US 338, 349, 98 S Ct 613, 38 LE 2d 56 (1974).

The Court further held that any deterrent effect which would be accomplished by quashing the evidence would be accomplished by quashing it in any criminal charge resulting from its discovery, that any additional deterrence accomplished by the application of the exclusionary rule in probation revocation proceedings would be marginal at best, and, therefore, that it would be unrealistic to assume that application of the rule to such proceedings would significantly further the purpose behind the rule.[3] An extension of the exclusionary rule to probation revocation cases would tend to deter only searches and arrests consciously directed toward probationers. 518 F2d 54. In view of the searching officers' unawareness of defendant's probationary status, the court did not apply the exclusionary rule. It said that even assuming some

---

[3] *See United States v. Workman,* 585 F2d 1205 (4th Cir 1978) for a contrary conclusion that suppression in probation revocation proceedings of illegally seized evidence would equally deter illegal action upon the part of police and that the rule of exclusion should therefore be extended.

marginal deterrent effect, a necessity to protect the public and the probationary system outweighs the importance of any deterrent effect. For a similar ruling, also *see United States v. Vandermark,* 522 F2d 1019 (9th Cir 1975).

Defendant contends that the language of *United States v. Calandra, supra,* does not justify the result or language in *Winsett.* In *Calandra* the issue was whether a witness summoned before a grand jury might refuse to answer questions that are based on evidence obtained from an unlawful search and seizure of the witness's business premises. The Court held that the witness must answer the questions and, in discussing the use of the exclusionary rule, stated:

> "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim:
>
> > " '[T]he ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late.' Linkletter v. Walker, 381 US 618, 637, 14 L Ed 2d 601, 85 S Ct 1731 (1965).
>
> "Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable search and seizures:
>
> > " 'The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' Elkins v. United States, 364 US 206, 217, 4 L Ed 2d 1669, 80 S Ct 1437 (1960).
>
> "Accord, Mapp v. Ohio,[367 US 643, 656, 6 L Ed 2d 1081, 81 S Ct 1684, 84 ALR2d 933 (1961)], Tehan v. Shott, 382 US 406, 416, 15 L Ed 2d 453, 86 S Ct 459 (1966); Terry v. Ohio, 392 US 1, 29, 20 L Ed 2d 889, 88 S Ct 1868 (1968). In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.
>
> "Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or

against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served. The balancing process implicit in this approach is expressed in the contours of the standing requirement. Thus, standing to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlwful search. *Brown v. United States,* 411 US 223, 36 L Ed 2d 208, 93 S Ct 1565 (1973); *Alderman v. United States,* 394 US 165, 22 L Ed 2d 176, 89 S Ct 961 (1969); *Wong Sun v. United States* [371 US 471, 9 L Ed 2d 441, 83 S Ct 407 (1963)]; *Jones v. United States,* 362 US 257, 4 L Ed 2d 697, 80 S Ct 725, 78 ALR 2d 233 (1960). This standing rule is premised on a recognition that the need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search.

"In deciding whether to extend the exclusionary rule to grand jury proceedings, we must weigh the potential injury to the historic role and functions of the grand jury against the potential benefits of the rule as applied in this context. It is evident that this extension of the exclusionary rule would seriously impede the grand jury. * * *.

"* * * * *.

"Against this potential damage to the role and functions of the grand jury, we must weigh the benefits to be derived from this proposed extension of the exclusionary rule. Suppression of the use of illegally seized evidence against the search victim in a criminal trial is thought to be an important method of effectuating the Fourth Amendment. But it does not follow that the Fourth Amendment requires adoption of every proposal that might deter police misconduct. * * *." (Footnotes omitted.) *United States v. Calandra,* 414 US 338 at 347-350.

Similar rationale and language can be found in *United States v. Janis,* 428 US 433, 96 S Ct 3021, 49 L Ed 2d 1046 (1976). In that case it was held that evidence unlawfully seized by a state officer could be

used in a civil case to which the United States was a party because there was an insufficient likelihood that the refusal of such use in a civil case would be enough of a deterrent upon state police officers so as to outweigh the societal costs imposed by the exclusion.

Defendant contends that the language of *Calandra* indicates that the evidence cannot be used in a probation revocation proceeding because "the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." It is our belief that the quoted language was intended to be used in *Calandra* in a context in which the criminal sanction results from a conviction brought about by the use of the evidence. Unless the officer is securing the evidence of a crime for the purpose of probation revocation, his knowledge that he cannot use the evidence to secure a conviction will have all the restraining influence that is possible to be asserted by the exclusionary rule. Any additional restriction on the use of the evidence would add little, if any, deterrence.

■ We agree with the rationale of *Winsett;* and it is applicable to the present case because there was no evidence in the revocation hearing that the arrest and search were directed at defendant because the police officer knew he was a probationer. We believe the quashing of the evidence in the probation revocation proceeding would have done little to deter police in similar circumstances; therefore, it cannot be justified.[4]

The decision of the Court of Appeals and the circuit court is affirmed.

---

[4] There was no need to consider what effect upon the result, if any, would have been occasioned had the police officer been shown to have known of defendant's probationary status.