STATE OF OREGON,
*Respondent,*
*v.*
HECTOR PARRAS,
*Appellant.*

(No. 11374, CA 12946)

606 P2d 656

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Gary S. Thompson, District Attorney, Prineville, argued the cause for respondent. With him on the brief was Edward E. Sites, Deputy District Attorney, Prineville.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

The defendant was convicted of murder. He appeals, raising three assignments of error. We affirm.

In his first assignment, defendant contends that the court erred in denying two distinct portions of the defendant's motion to suppress his own statements.

The initial portion of this contention challenges the admissibility of statements made by the defendant when he was first contacted by the police. During this encounter, the police did not advise the defendant of his *Miranda*[1] rights. The defendant argues that he was subjected to custodial interrogation and, since he was not informed of his rights, his statements and other information derived from the statements must be suppressed. If defendant is correct that his interrogation was "custodial," he would prevail on this point.

A brief summary of the facts is necessary to frame this issue. On May 15, 1978, in Prineville, the police discovered the body of the fourteen year old victim of this crime. Her body was lying in a field near the local high school. She had been raped and strangled.

That night, the police contacted the defendant at a relative's house. The police did not have any specific information which linked the defendant to the crime. The only reason that the police wanted to talk to the defendant was that he had been arrested on a prior rape charge. *See State v. Parras,* 43 Or App 373, 602 P2d 1125 (1979). The police wanted to know what the defendant had been doing during the previous evening and night.

The officers met the defendant in the front yard. Several of the defendant's relatives and friends were present and, as the court found, "[a]s a matter of convenience the interview was [then] conducted in the police car." The conversation lasted about one-half

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

hour. During the conversation, the officers noticed dark stains on the defendant's shoes. While the defendant insisted that the stains were ink, the officers felt that they might be blood stains. They asked the defendant if he would go with them to the police station so that a lab technician could look at the shoes. The court found that the defendant "complied without protest."

At the station, the police discovered that the stains were ink stains. They asked the defendant if he would consent to a strip search to look for marks of violence. The defendant consented to the search after signing a form which told him that he had a right to refuse to consent. The police then drove the defendant back to his relative's house. The entire encounter lasted about one and one-half hours.

The police testified that during this time the defendant was not in custody and that he was free to leave. The police did not have information which would have amounted to probable cause to arrest the defendant. The officers asked the defendant few questions. They accepted his story that the night before he had been drinking with friends. The officers described the atmosphere in the police car and at the station as pleasant. The defendant was cooperative.

*Miranda* warnings must be given "after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." 384 US at 444.

> "The test of whether a defendant was in custody for purposes of *Miranda* is an objective test. The relevant factors are: (1) whether the defendant could have left the scene of the interrogation voluntarily, (2) whether he was being questioned as a suspect or merely a witness, and (3) whether the defendant freely and voluntarily accompanied the police to the place of questioning. *State v. Paz,* 31 Or App 851, 859-60, 572 P2d 1036 (1977)." *State v. Campbell,* 43 Or App 979, 982, 607 P2d 745 (1979);

*see also State v. Armstrong,* 38 Or App 219, 589 P2d 1174 (1979).

A defendant is not in custody solely because questioning takes place in a police car or at the station house. *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977); *see also State v. Braun,* 9 Or App 137, 495 P2d 304 (1972). Here, as in *Mathiason,* "there is no indication that the questioning took place in a context where [the defendant's] freedom to depart was restricted in any way * * *." 429 US at 495. The circumstances did not constitute "custody," for *Miranda* purposes, as a matter of law.

As a matter of fact, the trial court found that, while the defendant was a suspect, he was free to leave, and that he freely and voluntarily entered the police car and accompanied the officers to the station. While the defendant testified that he thought he was not free to leave, the court did not believe him. Although we draw our own legal conclusions, we accept the trial court's resolution of conflicting testimony. *State v. Warner,* 284 Or 147, 585 P2d 681 (1978); *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). We affirm the trial court's holding that, on May 15, the defendant was not subjected to "custodial interrogation."

The second portion of the defendant's first assignment of error contests the admissibility of statements given by the defendant during a second encounter with the police which took place on May 16, 1978. Between the defendant's first and second meeting with the police, the officers had obtained information which implicated defendant in the murder. During the second meeting, the defendant would not have been free to leave. He was informed of his *Miranda* rights as soon as he arrived at the police station at about 11:00 p.m. on May 16.

At about midnight, the officers asked the defendant if he was willing to take a polygraph test. Initially, the defendant said that he would take the test. However, as he and the officers approached the room containing

the polygraph machine, the defendant held up his attorney's card, as the trial court found, "saying in effect that he wanted to talk to his lawyer before taking the test." The officers then informed the defendant that he was under arrest for the crimes of kidnapping, rape and murder.

The trial court described the rest of the encounter.

"The defendant said he wanted to talk to the officers some more about the subjects they had previously discussed. At this point the testimony of [one of the officers] becomes crucial * * *. It was late at night. The officers did not want to talk to the defendant. The defendant insisted that they talk. [The officer] testified that at three separate times he told the defendant that he could only talk to the officers if he did so of his own free will, and if he fully understood his rights. [Another officer] again read [defendant] his [*Miranda*] rights. The defendant again acknowledged [that he understood and waived his rights]."

The court believed the testimony of the officer. The defendant invoked his right to an attorney only in connection with the polygraph test. The statements he later made occurred only after he decided—without prompting—to speak to the officers.

Based upon these facts as found by the trial court, we agree with the court's conclusion that the defendant waived his right to counsel and that his statements were made voluntarily.

"Once [*Miranda*] warnings have been given, the subsequent procedure is clear. * * * If the individual states that he wants an attorney, the interrogation must cease * * *.
" * * * * *

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived * * * his right to * * * counsel * * *." *Miranda v. Arizona,* 384 US at 47375; *State v. Paz, supra,* 31 Or App at 864.

[480]

However, "* * * a defendant's right of access to a lawyer 'may be waived just as the right to remain silent itself may be waived,' although the state 'has the burden to show an intelligent relinquishment or abandonment of a known right or privilege.'" *State v. Singleton,* 288 Or 89, 100, 602 P2d 1059 (1979), quoting from *State v. Haynes,* 288 Or 59, 71-72, 602 P2d 272 (1979).

Here, the state has carried its burden. After the defendant indicated that he wanted to consult his attorney before taking the polygraph test, the police ended their interrogation. The officers testified that, at that point, they did not want to talk to the defendant. Although the officers repeatedly advised the defendant that they could speak with him only if he wanted to talk and if he understood and waived his rights, the defendant "insisted" that the conversation continue. The defendant again was informed of and waived his *Miranda* rights. The defendant relinquished his known right to consult an attorney.

The defendant argues that the police improperly persuaded him to retract his request for an attorney by saying that he was under arrest for kidnapping, rape and murder. The defendant is mistaken. The officer simply did what he had a right to do. *See State v. Campbell, supra* 43 Or App at 984-985. The police then had probable cause to arrest the defendant. They had ended their interrogation. They intended to place the defendant under formal arrest and to book him. The act of arrest was not an impermissibly coercive act; the police did not use impermissible coercive techniques to persuade the defendant to change his mind. *See State v. Singleton, supra; State v. Foster,* 40 Or App 635, 596 P2d 572 (1979); *State v. Paz, supra.* We affirm the trial court's holding that the defendant's statements made on the night of May 16 are admissible.

The defendant's second assignment of error focuses on the defendant's motion to controvert certain evidence contained in an affidavit for a search warrant.

We note that the defendant's motion to controvert was not supported by an affidavit as is required by ORS 133.693(2)[2] but, in any event, we agree with the trial court that, even though the affidavit contained certain inaccuracies, it still established probable cause for the search when the inaccuracies were excised. *See State v. Hodges,* 43 Or App 547, 550, 603 P2d 1205 (1979); *State v. Brown,* 22 Or App, 592, 595, 540 P 2d 1029 (1975); *State v. Hughes,* 20 Or App 493, 532 P2d 818 (1975).

The search warrant authorized the search of the defendant's residence for blood-stained clothing. Disregarding the inaccurate portions of the affidavit, the affidavit indicated that the defendant was at the victim's apartment at the approximate time of the crime, that he had lied to the police about this fact, that he had been seen near where the body and human blood were found, that while there he had dropped to the ground when a police car drove by and that he then proceeded home. These allegations provide probable cause for the issuance of the search warrant.

The defendant presents a third assignment of error. However, as his brief acknowledges, the claimed error was not raised below. We do not reach it.

Affirmed.

---

[2] ORS 133.693(2) states:

"(2) If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affidavit as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness."