Argued and submitted October 20, affirmed as to CA 18187
and 18188, reversed and remanded for a new trial as
to CA 18189 December 29, 1980, reconsideration allowed, former
opinion adhered to as modified (51 Or App 125, 624 P2d 655)
March 9, petition for review allowed May 19, 1981
See later issue Oregon Reports

STATE OF OREGON,
*Respondent,*

*v.*

STEVEN J. FIELDS,
*Appellant.*

STATE OF OREGON,
*Respondent,*

*v.*

STEVEN J. FIELDS,
*Appellant.*

STATE OF OREGON,
*Respondent,*

*v.*

STEVEN J. FIELDS,
*Appellant.*

(No. 10-79-08668, CA 18187)
(No. 10-79-10392, CA 18188)
(No. 10-80-02563, CA 18189)

(Cases consolidated)

621 P2d 651

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Schwab, Chief Judge, and Richardson and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Defendant was convicted of unauthorized use of a motor vehicle (ORS 164.135). In addition, based mainly on the conduct which resulted in that conviction, defendant's probation for two earlier offenses was revoked. Defendant appeals from the judgment of conviction and from both orders revoking his probation. We have consolidated them for purposes of disposition on appeal. His contention in both appeals is that he made inculpatory statements under circumstances which violated his rights under *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974 (1966), and those statements should have been suppressed in both the criminal trial and the revocation proceedings.

In January, 1980, defendant was placed on probation following his conviction for unauthorized use of a vehicle and for theft in the first degree. In March, 1980, defendant's probation officer, James Mohr, was informed by defendant's mother that defendant was in possession of "a new sporty car although he had no resources for it." Mohr contacted Detective Daniel Stroebel of the Eugene Police Department, who informed him that such a car had recently been reported stolen. Stroebel was familiar with defendant because of the earlier unauthorized use incident, and he considered that there were significant similarities between that incident and the current one. Mohr decided to "have [defendant] come down to the office [to get] to the bottom of this matter" and to have defendant complete a monthly probation report then overdue. Mohr went to defendant's house and informed defendant only that he wanted defendant to come to the office to fill out the report. Defendant accompanied Mohr to the latter's office.

While defendant was at Mohr's office—but apparently not in Mohr's presence—Mohr called Stroebel and the latter told Mohr he would like to "discuss" some questions with defendant. After defendant completed the monthly report, Mohr summoned him to a conference room. The two sat at a table, with defendant on the side farthest from the door. Stroebel entered the room a short time later and sat at the opposite side of the table, closest to the door. The door was then closed.

Stroebel informed defendant that he was not under arrest and did not have to answer questions. However, neither he nor Mohr gave *Miranda* warnings to defendant.[1] According to Stroebel, the following then occurred:

> "Then I advised Mr. Fields I was investigating the matter of a stolen vehicle and there was information possibly pertinent to the vehicle which he might have. I told Mr. Fields that he was not under arrest, and that he didn't have to make any statements to me about it if he didn't want to. And at that time, as Mr. Mohr has testified, I described the details, as I knew them, regarding this stolen vehicle and his possible involvement in it. And he said that he had, he had taken the car, he did it. And —
>
> "Q. His words, if you can remember?
>
> "A. His words were, 'I took it.'"

Defendant sought to suppress his confession at both the criminal trial and the revocation hearing on the ground that he was in custody and had not been given *Miranda* warnings prior to the beginning of the interrogation. In the criminal proceedings the trial court concluded that defendant was not in custody, and that his statement was therefore admissible. As a further basis for admitting the statement in the revocation proceeding, the court stated:

> "* * * I do not believe that the Miranda rule or exclusion of evidence in relation of the Miranda rule has any place in respect to the probation violation. * * *"

■ We agree with the trial court that, even if defendant's statement was procured in violation of *Miranda,* it would be admissible in the revocation proceeding under the Supreme Court's decision in *State v. Nettles,* 287 Or 131, 597 P2d 1243 (1979). The court held that the rule excluding evidence obtained through illegal searches does not apply in probation revocation proceedings, at least where the officer who performed the search did not do so "for the purpose of probation revocation." 287 Or at 139. The court reasoned that the exclusionary rule is aimed at deterring illegal searches, and that its extension to proceedings not anticipated by the person conducting the search would not

---

[1] Mohr did not participate in the discussion between defendant and Stroebel, and apparently did not discuss the car theft with defendant at any earlier time.

further that objective. The same reasoning is applicable to statements obtained in violation of *Miranda.*

Here, unlike the *Nettles* situation *(see* 287 Or at 139, n. 4), the officer ·was aware that defendant was on probation. However, there is nothing in the record to indicate that Stroebel's objective was to obtain evidence aimed at revoking defendant's probation rather than to solve the crime then under investigation. In any event, the underlying logic of *Nettles* is that excluding evidence in revocation proceedings as well as criminal trials which arise from the same episode adds little to the deterrence of improper police conduct and detracts much from the probationary system. 287 Or at 136-37. If any improper police activity did take place, the suppression of defendant's statement as evidence of guilt at his criminal trial would be sufficient to serve the deterrence function. Therefore we affirm the two orders revoking defendant's probation.

■    We turn to the question of whether defendant's confession should have been suppressed as evidence in his trial for unauthorized use of a vehicle. The decisive issue is whether defendant was in custody at the time he made his statement.[2] Whether a defendant is in custody, for purposes of determining if he must be given *Miranda* warnings before questioning begins, depends on whether "a reasonable person would have concluded that his freedom was restrained in any significant way." *State v. Armstrong,* 38 Or App 219, 224, 589 P2d 1174, *rev den* 287 Or 129 (1979). That test is an "objective" one, in that the issue is whether a "reasonable person" would have so concluded, whether or not the particular defendant did or did not so conclude.[3]

---

[2] Some question can be raised as to whether *any* interrogation occurred here, whether custodial or not. Stroebel informed defendant he was not under arrest and was not obliged to answer questions. Stroebel then described the details of what he was investigating and advised defendant of his suspected "possible involvement in it." Defendant confessed before Stroebel could—at least literally—ask him anything. In our view, however, Stroebel's advising defendant that the latter was not required to answer, followed by his describing the crime, and his suspicions, to defendant, constituted comments which were "reasonably likely to elicit incriminating information," *State v. Gill,* 24 Or App 541, 545, 546 P2d 786 (1976), and were intended to do so.

[3] We note, however, that when, as here, the defendant does not testify at the suppression hearing, it will often be difficult to know all the circumstances to which the objective test is to be applied.

■ In *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978), we set forth three inquiries which are relevant in determining whether a defendant is "in custody" for purposes of *Miranda:* "Whether the defendant could have left the scene of the interrogation voluntarily"; "whether the defendant was questioned by the police as a suspect or merely as a witness"; and "whether a defendant freely and voluntarily accompanied police to the place of his questioning." 31 Or App at 860. There is a clear answer to only one of the three questions here: defendant was questioned as a suspect and not merely as a witness.

Whether, under these facts, defendant could have voluntarily left the scene of the interrogation is a closer question. Mohr testified, when asked if he would have permitted defendant to leave the conference room after Stroebel arrived, that "I would have asked Steven to remain where he was." Stroebel's testimony on the point was that, prior to defendant's confession, Stroebel had no basis for holding him.

The totality of the circumstances in which defendant found himself, however, leads to the conclusion that a reasonable person would not have believed that he was free to leave. After Stroebel arrived on the scene, the door to the room was shut, and both Stroebel and Mohr were seated between defendant and the closed door. Although Stroebel advised defendant that he was not under arrest, he also made it reasonably clear that he believed defendant had information concerning the stolen automobile then under investigation. Furthermore, Mohr, as defendant's probation officer, had authority to take him into custody for violating the terms of his probation. Aside from the offense being investigated, defendant's failure to file his monthly report when it was due constituted such a violation. In fact, there was no apparent reason for Mohr to be in the room while Stroebel was interrogating defendant other than to exercise authority as a probation officer. It is apparent from Mohr's testimony that he expected defendant to cooperate, and failure of defendant to do so would have been an additional ground on which Mohr could have recommended revocation of defendant's probation. We conclude that a

reasonable person in defendant's circumstances would reasonably have concluded that he was not free to leave.

Finally, the third question we posed in *Paz* — whether defendant voluntarily went to the scene of the questioning—does not appear to be applicable here. Defendant was not aware there was to be any interrogation until he was already at Mohr's office, and he had been informed by Mohr that the reason his presence was desired was for something other than the questioning.

We conclude that defendant's confession was made in the course of an interrogation while he was in custody, and that the confession was procured in violation of *Miranda.* Accordingly, his statements should have been suppressed as evidence at defendant's trial for unauthorized use of a vehicle. That judgment is therefore reversed and the matter remanded for a new trial.

Given the basis for our decision, we do not reach defendant's contention that it was error for the trial court to impose a sentence on the unauthorized use charge which was consecutive to his imprisonment pursuant to the probation revocation. *But see State v. Jones,* 250 Or 59, 440 P2d 371 (1968).

Affirmed as to CA 18187 and 18188; reversed and remanded for a new trial as to CA 18189.