652 P.2d 812 (1982)
59 Or.App. 812
In the matter of Steven McCluskey, a Minor Child.
State of Oregon, ex rel. Juvenile Department of Multnomah County, Respondent,
v.
STEVEN MCCLUSKEY, a Minor Child, Appellant.
No. 56,142-A; CA A21212.
Court of Appeals of Oregon, In Banc[*].
Argued and Submitted October 21, 1981.
Resubmitted May 4, 1982.
Decided October 13, 1982.
Reconsideration Denied December 10, 1982.
Hap Wong, Portland, argued the cause for appellant. With him on the brief was James J. Kirk, Portland.
Stephen F. Peifer, Asst. Atty. Gen., Salem, argued the cause for respondent. *813 With him on the brief were Dave Frohnmayer, Atty. Gen., and William F. Gary, Sol. Gen., Salem.
Resubmitted In Banc May 4, 1982.
RICHARDSON, Judge.
In this juvenile proceeding, the child appeals from the juvenile court's disposition order. The court found the child to be within its jurisdiction after determining that he had committed acts which, if committed by an adult, would have constituted burglary in the first degree. He contends that his motion to suppress "any and all oral admissions and confessions" should have been granted. We affirm, despite the court's improper admission of a portion of the evidence.
The child was taken into custody by the police at a bus depot on the basis of a report that he was a runaway. The child's father, who had requested that the child be taken into custody, told the police that the child had several knives in his backpack. The police searched the backpack and, in addition to the knives, found three 1/10 pint bottles of alcoholic liquor and seven dollars in pennies. The officer asked the child where he had got the bottles of alcohol and was told by the child that he had taken them from a Pay Less Store. The child was taken to the juvenile detention facility. The officer told him that he did not believe the alcohol came from Pay Less, and the child then said that he and a friend had taken them from a house. At this point the officer advised the child of his constitutional rights and questioned him regarding the burglary. The child gave a detailed account of breaking into the house and stealing certain items.
The father was present at the detention facility when the police advised the child of his rights and was present during a part of the subsequent questioning. Following the child's admissions to the police, he and his father had a private conversation at the detention facility out of the officers' presence. The child confessed details of the burglary to the father.
At the juvenile court hearing, the child moved to suppress all admissions and confessions, but the motion was denied. The state concedes that the court erred in denying suppression of the statements made to the police prior to and immediately after the child was advised of his rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; State v. Mendacino, 288 Or. 231, 603 P.2d 1376 (1979); State v. Paz, 31 Or. App. 851, 572 P.2d 1036 (1977), rev. den. 282 Or. 189 (1978).
The remaining question is whether the confession to his father is evidence that should have been suppressed. The child argues that, under Miranda, Mendacino and Paz, suppression is required, because the confession was made immediately after the improperly obtained admissions were made to the police and at the same location. See State v. Mendacino, supra, 288 Or. at 237, 603 P.2d 1376 (quoting United States v. Bayer, 331 U.S. 532, 540-41, 67 S.Ct. 1394, 1398-99, 91 L.Ed. 1654 (1947)).
The juvenile does not contend that his statement to his father was involuntary in the sense that it was not a product of his free will and was therefore unreliable. He only contends that his father was an agent of the police when he talked to him about the burglary and, thus, that any statement to his father must be suppressed as the tainted fruit of the unlawful confession to the police.
While the confession to the father was very close in time and location to the admissions to the police, those circumstances do not automatically require that the exclusionary rule be invoked. We have noted: "No hard and fast rule has been established for determining when official involvement is sufficient to bring the exclusionary rule into effect. Each case must be evaluated on its own facts." State v. Lowry, 37 Or. App. 641, 652, 588 P.2d 623 (1978), rev. den. 285 Or. 195 (1979).
The statements involved in Lowry were given by the defendant to his cellmate, Reed, who was awaiting transfer to a federal penitentiary. Reed was a known informant. In the past he had obtained information and given it to the police in exchange *814 for a variety of rewards. On the particular occasion involved in that case, Reed contacted the police and told them that he could get incriminating information from his cellmates. The police encouraged him to talk to a particular individual in the jail. Reed, in addition to conversing with that person, talked to the defendant and obtained information linking the defendant to a robbery. Reed contacted the police and told them about the defendant. They discouraged Reed's contacts with the defendant and specifically told him not to talk with the defendant. Despite this warning, Reed subtly questioned him and gained additional information respecting the robbery and disclosed that information to the police. They ultimately encouraged Reed to talk to the defendant, delayed his transfer to the federal penitentiary and had him assigned to the defendant's cell.
The trial court suppressed all statements of the defendant given to Reed. We affirmed the order of suppression only as to the information obtained after the police actively encouraged Reed's activities and delayed his transfer to afford him the opportunity to talk to the defendant. As to the other statements, we held that they were admissible because the police had not been actively involved in Reed's questioning of the defendant. Thus, we held that Reed was not a police agent, even though he consciously desired that status and the police were aware of his propensities.
The appropriate rule, recited in Lowry, is that the exclusionary rule applies to activities of private individuals if the police are "directly or indirectly involved to a sufficient extent in initiating, planning, controlling or supporting his activities." The extent of official involvement in the total enterprise is the crucial element. State v. Becich, 13 Or. App. 415, 509 P.2d 1232, rev. den. (1973). As demonstrated by our holding in Lowry, the involvement and intent of a private individual are relevant only insofar as they are initiated, planned, controlled or supported by the police.
Father's involvement was based on the father-son relationship and his desire to put the 13-year-old runaway in a secure environment. His cooperation with the police reflects understandable parental concern. His cooperation was not as an investigative arm of the police bureau. The investigating officers had already obtained a fully incriminating statement from the juvenile and had no need to enlist the aid of his father to obtain a confession. In Lowry and Becich we applied the exclusionary rule in situations where the police consciously utilized the services of a non-law enforcement person to do what they were constitutionally prohibited from doing, i.e., the police were a party to the evidence gathering activities in both cases.
The exclusionary rule, having as its objective the future deterrence of police overreaching in a constitutional sense, should not be applied beyond the limits of its goal. See State v. Quinn, 290 Or. 383, 623 P.2d 630 (1981). The investigating officers in this case would be surprised to learn that they were involved to any extent in the father and son conversation. There was simply no official involvement that requires us to exclude the statement made to the father.
Our review is de novo, and we may determine from the record whether, after excising the statements made to the police, there is sufficient evidence to establish beyond a reasonable doubt that the child committed the burglary. Prior to the hearing on the motion to suppress, the child's attorney stated:
"Basically the motion should be dispositive as far as we are concerned. If we lose on the motion, we would probably stipulate to the facts in this case and reserve the right of appeal, but we won't have a trial. * * *"
After the court denied the motion, the following colloquy occurred:
"THE COURT: Mr. Wong [the child's attorney], does your stipulation still hold?
"MR. WONG: That's right, Your Honor. We are going to stipulate to the facts in the police report. I will not put on any evidence. The only reason for that is we *815 want to preserve our right to appeal on the motion to suppress.
"THE COURT: Have you reviewed the police report, Mr. Wong, sufficiently so that the facts as set forth on the petition of 4-22-81 alleging Burglary in the First Degree are substantiated by the police report insofar as the dates and time and actual location of the property in question?
"MR. WONG: Yes, I have.
"THE COURT: And also the items that were alleged to have been taken? Are they accurately described in the police report or are there any discrepancies you can see from the police report and the allegation set forth in the petition?"
Counsel, after further discussion, agreed that the police report accurately reflected the facts of the burglary.
The police report recites that the resident of the burglarized residence reported a number of items stolen including several dollars in pennies and three 1/10 pint bottles of liquor. The report described the three bottles by brand names. The police report showed that the three liquor bottles found in the child's backpack were of the same size and brand names as the bottles reported stolen. Also found in the backpack were seven dollars in pennies. The report states that a neighbor of the burglarized residence identified a photograph of the child as a person she had seen near the burglarized house on the day of the burglary. The child's father testified during the hearing on the motion to suppress that the child had told him about the burglary and gave him essentially the same details the child had given the police.
The statement by the child to his father was properly received. That statement is part of the record and can be considered in determining if the state met its burden of proof. That statement, in conjunction with the other admissible facts from the police report, establish the allegations of the petition beyond a reasonable doubt.
Affirmed.
VAN HOOMISSEN, Judge, dissenting.
Steven McCluskey, age 13, appeals from an order of the juvenile court finding him to be within the court's delinquency jurisdiction. ORS 419.476(1)(a).[1] The issue is whether Steven's inculpatory statements to the police and to his father should have been received in evidence during the adjudicative phase of his juvenile court hearing. We review de novo. ORS 419.561(4).
When Steven ran away from home, his father reported that fact to the police. Later, father informed the police that Steven was at the bus depot. The police arrived at the depot about midnight, and they found father with Steven in the depot security office. Father informed them that Steven was beyond his control, that he had been arrested for shoplifting earlier in the day and that he had some knives in his backpack. The police searched the backpack and found three bottles of alcohol and about seven dollars in pennies. Father then asked them to transport Steven to juvenile detention, because he feared his son would run away again if returned home.
Steven was transported to juvenile detention about 12:26 a.m. There the police questioned him about a burglary without first advising him of his Miranda rights.[2] Steven made incriminating statements indicating that he was involved in the burglary. The police then advised Steven of his Miranda rights and continued their interrogation. Father was present when the Miranda warnings were given, and he heard Steven give the police details of the burglary. He had no independent knowledge of the burglary.
*816 The police then left the room, leaving father and son behind in detention. Within minutes they had a conversation, during which father asked Steven about the burglary. When asked at the hearing what Steven had told him about the burglary, father testified:
"A: Just told me that they had gone into a house and that they had taken a few things. I wanted to know where the house was. I asked him why he had done it and he didn't seem real clear on why he had done it other than they needed the money and it was just they did it."
About 1:17 a.m., the police took Steven to the burglary scene. They continued to interrogate him, and he made more inculpatory statements.
Steven's attorney moved to suppress the statements to the police and to father. The juvenile court denied that motion. Without waiving objection, the attorney then stipulated to the police report, which was received in evidence. The court thereupon found that Steven was within its delinquency jurisdiction. ORS 419.476(1)(a).
The state now concedes that the juvenile court erred in denying suppression of the statements made to the police. It contends, however, that the statement Steven made to his father is nevertheless admissible and that the statement, when considered with the stipulated evidence, established beyond a reasonable doubt that Steven committed the burglary and that he is, therefore, within the juvenile court's delinquency jurisdiction.
The issue is whether father was acting on his own, independently of the police. State v. Lowry, 37 Or. App. 641, 588 P.2d 623 (1978), rev. den. 285 Or. 195 (1979). If he was, the exclusionary rule would not apply. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). The rule applies if the police were directly or indirectly involved to a sufficient extent in initiating, planning, controlling or supporting the father's activities. State v. Lowry, supra.
I conclude that father was not acting on his own, independently of the police, and that the police were directly or indirectly involved to a sufficient extent in supporting father's activities that the exclusionary rule applies to Steven's statements to his father.[3] First, from the initial encounter at the bus station, the police exhibited eagerness to aid father. When father told them about the knives in Steven's backpack and about the arrest for shoplifting earlier in the day, the police searched Steven's backpack and questioned him about his activities. When father asked the police to take Steven to juvenile detention because he could not control him, they did so. Second, father learned of the burglary from the police. But for that, and the illegally obtained statements, father would not have sought and obtained the inculpatory statement that the state relies on to prove its burglary case against Steven. Third, the police left father and Steven together within the coercive confines of juvenile detention just minutes after Steven had made two tainted statements. Fourth, father signed a petition asking the juvenile court to assume delinquency jurisdiction over Steven on account of the burglary rather than jurisdiction based upon his status as an uncontrollable, endangered or runaway child. ORS 419.476(1)(b)-(c), (e)-(f).
The majority finds it persuasive that the police already had obtained a statement from Steven and therefore "had no need to enlist the aid of his father to obtain a confession." The evidence does not support such a conclusion. The police had every reason to know that the statements they had obtained from Steven were inadmissible. That conclusion was so patent that the state conceded error on the issue in this court. Immediately thereafter, the police left father and Steven together within the coercive confines of juvenile detention where father commenced interrogating him about the burglary. To countenance this *817 result is to permit the police to do indirectly what they could not do directly because of their failure to advise Steven of his Miranda rights.
Because the police were so directly involved in supporting father's activities, the exclusionary rule requires suppression of the statement to father. Absent evidence of the statements to the police and to father, the record here is insufficient to support the juvenile court's jurisdictional finding.[4]
BUTTLER, J., joins in this dissent.
NOTES
[*] Thornton, J., did not participate in this decision.
[1] ORS 419.476 provides:

"(1) The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:
"(a) Who has committed an act * * * which if done by an adult would constitute a violation, of a law * * * of * * * a state * *.
"* * *."
[2] See In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
[3] State v. Mendacino, 288 Or. 231, 603 P.2d 1376 (1979); State v. Keller, 240 Or. 442, 402 P.2d 521 (1965); State v. Ely, 237 Or. 329, 332, 390 P.2d 348 (1964); State v. Paz, 31 Or. App. 851, 873-74, 572 P.2d 1036 (1977); State v. Garrison, 16 Or. App. 588, 519 P.2d 1295, rev. den. (1974); accord State v. Allies, Mont., 621 P.2d 1080 (1980).
[4] That the state has failed to establish jurisdiction on the basis of delinquency certainly does not imply that the juvenile court could not find jurisdiction on some other basis and pursuant to a new petition. See, e.g., ORS 419.476(1)(b) (beyond control of parents); ORS 419.476(1)(c) (behavior, condition or circumstances); ORS 419.476(1)(e) (care, guidance and protection necessary for well-being); ORS 419.476(1)(f) (runaway). After finding that it has jurisdiction on any basis, the juvenile court would be empowered to enter the identical dispositional order entered here, thus meeting the needs of the child, family and society.