## STATE OF OREGON,
*Appellant,*

*v.*

## RANDY OSBORN,
*Respondent.*

(85-04-1397-C; CA A36676)

728 P2d 891

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

John P. Daugirda, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

The state appeals from a pretrial order suppressing defendant's statements to police officers and the evidence derived therefrom. The issue is whether the trial court erred in finding that the codefendant was an agent of the police when he obtained incriminating statements from defendant after defendant had invoked his right to remain silent and in suppressing the evidence. Because we conclude that there was evidence to support the trial court's findings and that those findings support the conclusion that suppression is required, we affirm.

On the evening of March 12, 1985, defendant was questioned by Harney County Sheriff Glerup and Burns Police Chief Richardson about the burglary with which he is charged. He was advised of his *Miranda* rights and was told that he had been implicated in the crime by an accomplice. He responded that he knew nothing of the burglary and did not wish to talk about it. The officers understood that defendant was exercising his right to remain silent, terminated the questioning, arrested him and booked him into jail.

Richardson returned to the Burns police station, where Dunn, another suspect in the burglary, was waiting. Earlier that day Richardson had discussed the burglary with Dunn's parents and had suggested to them that it would be advantageous to Dunn if he were to cooperate with the authorities. Richardson explained the situation to Dunn, who then admitted his involvement in the burglary. Richardson testified that he

> "thanked him, and I told him that a lot of times, when you cooperate and get this stuff off your chest, you feel better; a lot of times, any probation officers look at things like this, judges look at things like this; anytime people cooperate when they got their hand in the cookie jar, things look a little better for 'em."

Dunn was arrested and taken to the jail for booking and to arrange bail.

At the jail, Dunn asked the officers if defendant had cooperated with the police and was told that he had not said anything about the burglary. Dunn then asked if he could speak with defendant, making it clear to Richardson and

Glerup that he intended to convince defendant to confess his role and to explain the whereabouts of a handgun that had been stolen in the burglary. The officers decided to take advantage of Dunn's offer to cooperate[1] and brought defendant from his cell, placing the two men alone in the station coffee room. Defendant was not re-advised of his rights or told that Dunn's purpose in speaking to him was to elicit a confession. There is nothing to indicate that defendant asked to see Dunn or agreed to forego his right to remain silent.

Defendant and Dunn spoke privately for 20 to 30 minutes, after which Dunn left. Defendant then asked to speak to the sheriff and was taken to his office, where he confessed to his involvement in the burglary. He also told the officers where he had concealed the stolen handgun, which was later found and seized.

In granting defendant's motion to suppress all statements and admissions made to the police following his arrest, and the evidence seized as a result of those statements, the trial judge found:

> "There was a clear understanding of what Mr. Dunn was going to attempt to accomplish by talking to Mr. Osborn. The police then facilitated such conversation by allowing Mr. Dunn to meet with Mr. Osborn. The difficulty arises in this case in that such conversation could not have taken place were it not for police action of allowing an exception to jail facility rules in order to accommodate the meeting between Mr. Dunn and Mr. Osborn.

> "* * * * *

> "The hope which was realized was that Mr. Dunn could get Mr. Osborn to do that which the police could pursue no further due to the Defendant invoking his right to remain silent."

Those findings are supported by the record.

---

[1] On cross-examination, Sheriff Glerup testified:

"Q. Okay. So you had to go get [defendant], and bring him to Mr. Dunn, so that Mr. Dunn could get him to confess. Isn't that right?

"A. So Mr. Dunn could talk to him, yes.

"Q. To get him to confess?

"A. I was hoping that's what would happen, yes."

Defendant asserts a violation of his rights under both Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution, relying primarily on *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), and on *State v. Sparklin,* 296 Or 85, 672 P2d 1182 (1983), and *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983), adopting the *Miranda* rule under Article I, section 12. In order to focus on the issue, we quote the relevant portion of *Miranda* on which defendant relies:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." 384 US at 473.

The question is whether the same rule applies under the Oregon Constitution. Both *State v. Sparklin, supra,* and *State v. Mains, supra,* seem to say that the advice of rights required by *Miranda* are also required under the Oregon Constitution. We assume that, given that requirement, the failure to honor a defendant's decision to remain silent by ceasing interrogation would violate the defendant's state constitutional rights, resulting in suppression of the evidence obtained by that violation. However, in *State v. Smith,* 301 Or 681, 725 P2d 894 (1986), decided after this case was argued, a plurality of the court abandoned *Sparklin* and *Mains* to the extent that those cases would apply the *Miranda* rule to effectuate the guaranties of Article I, section 12, and left the question of whether a statement is voluntary or not to a factual inquiry under the rules of the common law or statute. The other judges stood by *Sparklin* and *Mains,* although one of them wanted to limit their application to a defendant in full custody. Because defendant here was in full custody, we assume that the law enunciated in *Sparklin* and *Mains,* including the portion of *Miranda* quoted above, continues to be applicable to effectuate the protections afforded under Article I, section 12, independent of the federal constitutional protections.

Accordingly, once defendant asserted his right to remain silent, that right should have been scrupulously honored. The state does not dispute that proposition; instead it argues that the trial court's finding that Dunn was, in effect, an agent of the police was error, because the official involvement in the conversation between defendant and Dunn was too minimal to make Dunn a "police agent" for the purpose of applying the exclusionary rule. However, in *State v. Lowry,* 37 Or App 641, 651-52, 588 P2d 623 (1978), *rev den* 285 Or 195 (1979), we said that "if the police were directly or indirectly involved to a sufficient extent in initiating, planning, controlling or supporting [the agent's] activities, the exclusionary protection would apply." The reason for exclusion is to discourage police from engaging indirectly in interrogation that would be impermissible if conducted directly by the police. *State v. Lowry, supra,* 37 Or App at 652; *State v. Becich,* 13 Or App 415, 419, 509 P2d 1232, *rev den* (1973).

It is clear that defendant invoked his right to remain silent and that Glerup and Richardson knowingly made special arrangements[2] for Dunn to speak with defendant in the hope that Dunn could elicit a confession from defendant. It is also clear that, at that time, the officers could not have talked to defendant for that purpose.

The state's contention that it was Dunn's idea to speak with defendant overlooks the fact that the police had made it clear to Dunn earlier that his cooperation would be beneficial to him. Thus, not only did the police implicitly encourage Dunn's effort, they also supported the plan, which could not have taken place without their cooperation. Accordingly, the trial court's findings support its conclusion that the participation of the police in having Dunn elicit incriminating statements from defendant at a time when the police were not free to do so was sufficient to justify suppression of the evidence.[3]

---

[2] The conversation between defendant and Dunn did not take place during regular visiting hours at the jail.

[3] The state argues that this case is controlled by *State ex rel Juv. Dept. v. McCluskey,* 59 Or App 575, 652 P2d 812 (1982), *rev den* 294 Or 461 (1983). In that case we did not exclude statements made by a son to his father, after the son had confessed to the police. We found that the father's involvement was based on the father-son relationship and that the father's cooperation was not as an investigative arm of the police. There was no official involvement requiring exclusion of the statements. That is not this case.

Because the evidence must be suppressed under Article I, section 12, we need not decide the federal question.

Affirmed.

**ROSSMAN, J.,** dissenting.

In my opinion, the official involvement in the conversation between defendant and Dunn was too minimal to make Dunn a "police agent" for the purpose of applying the exclusionary rule. Accordingly, I respectfully dissent.

As noted by the majority, whether the exclusionary rule applies to activities of private individuals depends on whether the police were "directly or indirectly involved to a sufficient extent in initiating, planning, controlling or supporting his activities." *State v. Lowry,* 37 Or App 641, 651-52, 588 P2d 623 (1978), *rev den* 285 Or 195 (1979). Here, what is most indicative of the extent of the police involvement is not what affirmative actions were taken by the police but what they did not do.

First, they did not "initiate" the conversation; Dunn asked to speak to defendant. Second, although a meeting between defendant and Dunn was thereafter arranged, defendant does not contend that Dunn was further encouraged to follow through with his plan or that the police suggested an approach or otherwise controlled Dunn's participation in the conversation. Neither is it claimed that they listened to the conversation or initiated the subsequent conversation between themselves and defendant. Finally, although Dunn was advised that it would be to his advantage to cooperate with the police, there is no evidence that he initiated the conversation with defendant to better his own position. Rather, he asked if he could talk to defendant "so that things may go a little easier on [defendant]."

Granted, the officers cooperated with Dunn to the extent of making defendant available at other than normal visiting hours. Also, they knew what Dunn intended to do. However, I believe that that falls way short of being the kind of official involvement necessary to transform Dunn into a state agent. I would hold that defendant's statements were not involuntary and inadmissible.