Argued and submitted December 21, 1988, affirmed June 14, reconsideration denied
August 25, petition for review allowed October 26, 1989 (308 Or 465)

# STATE OF OREGON,
*Respondent,*

*v.*

# DANIEL EDWARD BUCHHOLZ,
*Appellant.*

(10-87-00725; CA A45808)

775 P2d 896

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds,* Judges.

EDMONDS, J.

Riggs, J., concurring.

---

* Edmonds, J., *vice* Warden, J., retired.

## EDMONDS, J.

Defendant was convicted by a jury of murder and robbery in the first degree. ORS 163.116; ORS 164.415. He appeals both convictions. We affirm.

Defendant and Cooper attacked the victim at the victim's residence. Cooper struck the victim on the back of the head with the victim's cane, and defendant took the victim's wallet. The victim ultimately died from the head injury inflicted by Cooper. Both defendant and Cooper were charged with murder and robbery in the first degree. The prosecutor offered a plea agreement to Cooper by which he would be permitted to plead guilty to the robbery charge and to the lesser included offense of manslaughter in exchange for his agreement to testify against defendant. Cooper accepted and testified against defendant. Defendant was not offered a similar plea agreement.

1. Defendant assigns as error the trial court's denial of his "Motion to Compel Plea Agreement," arguing that ORS 135.405(4)[1] and Article I, section 20, of the Oregon Constitution[2] require the prosecutor to offer the same plea agreement to all codefendants charged with identical offenses. We disagree. The legislative history of ORS 135.405(4) demonstrates that it was intended to encourage district attorneys to offer equal plea agreement opportunities to similarly situated defendants, but that it does not mandate that they do so.[3] Furthermore, the equal privileges standards of Article I, section 20, are satisified if no discriminatory practice or illegitimate motive is shown and the use of prosecutorial discretion was proper. *State v. Clark,* 291 Or 231, 246, 630 P2d 810, *cert*

---

[1] ORS 135.405(4) provides:

"Similarly situated defendants should be afforded equal plea agreement opportunities."

[2] Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

[3] Or Laws 1973, ch 836, § 170, amended ORS 135.405 to add subsection (4). The Senate Judiciary Committee intended that the amendment reflect the ABA *Standards of Criminal Justice.* The words "should be" expressed their intent that the subsection be read as precatory only. *See* Minutes, Senate Judiciary Committee, March 19, 1973, p 3.

*den* 454 US 1084 (1981). Because defendant offers no evidence of such an impermissible practice or motive, we hold that there was no error. *See also State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981).

Defendant also argues that the trial court erred in admitting statements that defendant made to police after his arrest. Only the circumstances surrounding the final statement merit discussion, because the two prior statements were voluntary and were made after defendant was advised of his *Miranda* rights.

**2.**     Detective Welch of the Lane County Sheriff's office contacted Cartlidge, an employe of the Children Services Division, who had acted as defendant's juvenile parole officer before defendant had absconded from parole. Welch informed Cartlidge that defendant was being returned to the juvenile detention facility and was a suspect in a possible homicide. Welch did not request that Cartlidge interview defendant concerning the homicide, but he may have asked him to determine if defendant was willing to tell the truth, should another interview occur.[4]

Cartlidge met with defendant that evening and told him how disappointed he was with his behavior. Cartlidge then told defendant that he was a suspect in the homicide investigation and that Welch suspected that defendant had

---

[4] At the hearing on defendant's motion to suppress, Welch testified regarding his conversation with Cartlidge:

"Q Your purpose in calling Mr. Cartlidge was to find out what you could about Mr. Buchholz's background and his circumstances with his parole?

"A Yes.

"Q Did he indicate to you that he would be contacting Mr. Buchholz at the Skipworth Detention Center after receiving your information?

"A Yes.

"Q And did he indicate to you what steps he would take when he contacted him?

"A He talked about the possibility of Mr. Buchholz being violated.

"* * * and after Mr. Cartlidge told me about Mr. Buchholz's past history and the fact that he had a history of ripping old guys off, there was some discussion about—in fact, it may have been a request on my part when he did talk to Mr. Buchholz to ask him if he was willing to tell the truth this time in another interview, should he be willing to submit to a second interview."

Cartlidge testified that Welch did not ask him to talk to defendant, but that Cartlidge told Welch that he was going to contact defendant because of the parole violation.

more to say about it. At some point thereafter, defendant stated, "I think I should speak with an attorney before I make a statement." Cartlidge assured defendant that an attorney would be provided, but not until the next morning, because it was then a Sunday evening. He did not know many details about the homicide and did not consider himself part of the police investigation concerning it. Cartlidge did not question defendant about the homicide, but said that, if defendant were to choose to speak with the police about *some* crime that he was involved in, he should make sure that he "told them the truth."

At the conclusion of the conversation, and without prompting by Cartlidge, defendant told Cartlidge that he wished to speak with Welch. Cartlidge told defendant that he would not be able to talk to an attorney until morning, that it was Welch's day off and that he did not want to bother Welch at home. Defendant insisted on seeing Welch that evening. Welch was then contacted at home and was told that defendant wanted to speak with him. Welch was never told that defendant had mentioned a desire to speak with an attorney. Welch recontacted defendant and ascertained from him that his decision to talk to Welch was not prompted by Cartlidge. Defendant did not invoke his right to an attorney in his conversation with Welch. He was readvised of his rights, waived them and voluntarily confessed to participating in the homicide.

If Cartlidge was acting as an agent for the police, knowledge of defendant's invocation of his right to counsel would be imputed to the state, and defendant's confession would be inadmissible. *Edwards v. Arizona,* 451 US 477 101 S Ct 1880, 68 L Ed 2d 378 (1981); *State v. Kell,* 303 Or 89, 734 P2d 334 (1987); *State v. Paz,* 31 Or App 851, 867, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978). The test to determine if Cartlidge was an agent of the police is whether Welch was directly or indirectly involved in initiating, planning, controlling or supporting a discussion that would elicit incriminating statements from defendant. *See State v. Osborn,* 82 Or App 451, 728 P2d 891, *rev den* 302 Or 614 (1986); *see also State v. Lowry,* 37 Or App 641, 651-52, 588 P2d 623 (1978), *rev den* 285 Or 195 (1979). Cartlidge was not asked to contact defendant, nor was he asked to discuss the facts of the homicide with defendant. He did not ask defendant any questions about the

homicide, and he did not suggest that defendant talk to Welch. Under these circumstances, Cartlidge was not acting as an agent of the police.[5] Without an agency relationship between the police and Cartlidge, knowledge of defendant's request for an attorney cannot be imputed to the police.

**3.** Defendant's remaining assignment of error merits little discussion. The arresting officer's search of the stolen vehicle in defendant's possession at the time of his arrest was a proper inventory of the vehicle's contents before its return to its owner. *See State v. Normile,* 52 Or App 33, 627 P2d 506 (1981).

Affirmed.

**RIGGS, J.,** concurring.

Although its holding is correct, the majority is wrong when it asserts in *dictum*: "If Cartlidge was acting as an agent for the police, * * * defendant's confession would be inadmissible." 97 Or App at 225. The determinative issue in this case is not the lack of an agency relationship between defendant's juvenile parole officer and the police, but rather defendant's reinitiation of contact with the police regarding the crime with which he was charged. *Oregon v. Bradshaw,* 462 US 1039, 103 S Ct 2830, 77 L Ed 2d 405 (1983); *State v. Kell,* 303 Or 89, 734 P2d 334 (1987); *State v. Parras,* 44 Or App 475, 606 P2d 656, *rev den* 289 Or 373 (1980). The juvenile parole officer's actions in counseling defendant to be truthful present no problem under *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), or *State v. Kell, supra,* because the parole officer did not question defendant about the crime and made no attempt to persuade him to change his mind about invoking his right to counsel. The case is thus distinguishable from *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978).

---

[5] Although the state concedes in its brief that Cartlidge was an agent of the state, we assume that this concession relates only to his employment by Children Services Division, not to his relationship with Welch, an employe of the Lane County Sheriff's Department. Unlike the situation in *State v. Fields,* 49 Or App 1033, 1037-38, 621 P2d 651 (1980), *modified* 51 Or App 125, 624 Pd 655, *rev'd in part,* 291 Or 872, 635 P2d 376 (1981), Cartlidge was not acting as an investigator or allied in any other way with the investigation of the homicide. *See also Minnesota v. Murphy,* 465 US 1120, 104 S`Ct 1136, 79 L Ed 2d 409 (1984); *United States v. Deaton,* 468 F2d 541 (5th Cir 1972), *cert den* 410 US 934 (1973); *State v. Lekas,* 201 Kan 579, 442 P2d 11 (1968).